# In the United States Court of Appeals
## for the Fifth Circuit

No. 20-30364

O'BRIEN'S RESPONSE MANAGEMENT, L.L.C.;
NATIONAL RESPONSE CORPORATION,

PLAINTIFFS – APPELLEES

v.

BP EXPLORATION & PRODUCTION, INCORPORATED;
BP AMERICA PRODUCTION COMPANY,

DEFENDANTS – THIRD-PARTY PLAINTIFFS – APPELLANTS

v.

NAVIGATORS INSURANCE COMPANY,

THIRD-PARTY DEFENDANT – APPELLEE

On Appeal from the U.S. District Court
for the Eastern District of Louisiana
No. 2:19-cv-01418

## RECORD EXCERPTS

R. Stanton Jones
William C. Perdue
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000

George W. Hicks, Jr.
Aaron L. Nielson
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 389-5000

*Counsel for BP Appellants*
(additional counsel listed inside front cover)

August 27, 2020

Devin C. Reid
LISKOW & LEWIS
One Shell Square, Suite 5000
701 Poydras Street
New Orleans, LA 70139
Telephone: (504) 581-7979

Matthew T. Regan, P.C.
J. Andrew Langan, P.C.
Kristopher S. Ritter
Brenton A. Rogers
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000

# TABLE OF CONTENTS

| DOCKET NO. | DESCRIPTION | ROA | PAGE | TAB |
|---|---|---|---|---|
|  | Docket Sheet | ROA.1 | RE-1 | 1 |
| 68 | Notice of Appeal | ROA.6812 | RE-16 | 2 |
| 67 | Judgment | ROA.6810 | RE-19 | 3 |
| 65 | Order & Reasons (Revised) | ROA.6837 | RE-21 | 4 |
| 30-3 | BP-O'Brien's Master Consulting Services Contract | ROA.1788 | RE-42 | 5 |
| 30-4 | BP-O'Brien's Bridge Agreement | ROA.1809 | RE-52 | 6 |
| 30-5 | BP-NRC Agreement | ROA.1829 | RE-63 | 7 |

# TAB 1

Jump to Docket Table

# U.S. District Court
# Eastern District of Louisiana (New Orleans)
# CIVIL DOCKET FOR CASE #: 2:19-cv-01418-CJB-JCW

| | |
|---|---|
| O'Brien's Response Management, L.L.C. et al v. BP Exploration & Production Inc. et al | Date Filed: 02/14/2019 |
| | Date Terminated: 05/12/2020 |
| Assigned to: Judge Carl Barbier | Jury Demand: Both |
| Referred to: Magistrate Judge Joseph C. Wilkinson, Jr | Nature of Suit: 190 Contract: Other |
| Cause: 28:2201 Declaratory Judgment | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **O'Brien's Response Management L.L.C.** | represented by | **Ivan Mauricio Rodriguez** |

Chaffe McCall LLP (New Orleans)
Energy Centre
1100 Poydras St.
Suite 2300
New Orleans, LA 70163-2300
713-546-9800
Email: ivan.rodriguez@phelps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric C. Lyttle**
Quinn Emanuel Urquhart & Sullivan, LLP (Washington)
777 6th Street NW
11th Floor
Washington, DC 20001-3706
202-538-8162
Email: ericlyttle@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Gary Alan Hemphill**
Phelps Dunbar, LLP (New Orleans)
Canal Place
365 Canal St.
Suite 2000
New Orleans, LA 70130-6534
(504) 566-1311
Fax: (504) 568-9130
Email: gary.hemphill@phelps.com
*ATTORNEY TO BE NOTICED*

**Jeremy T. Grabill**
Phelps Dunbar, LLP (New Orleans)
Canal Place
365 Canal St.

20-30364.1

Suite 2000
New Orleans, LA 70130-6534
504-566-1311
Fax: 504-568-9130
Email: jeremy.grabill@phelps.com
*ATTORNEY TO BE NOTICED*

**Michael J. Lyle**
Quinn Emanuel Urquhart & Sullivan, LLP
(Washington)
777 6th Street NW
11th Floor
Washington, DC 20001-3706
202-538-8166
Fax: 202-538-8100
Email: mikelyle@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Sylvia Ester Simson**
Greenberg Traurig, LLP (New York)
MetLife Building
200 Park Avenue
New York, NY 10166
212-801-9275
Email: simsons@gtlaw.com
*TERMINATED: 09/17/2019*

**Plaintiff**

**National Response Corporation**     represented by   **Ivan Mauricio Rodriguez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric C. Lyttle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gary Alan Hemphill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy T. Grabill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Lyle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sylvia Ester Simson**
(See above for address)
*TERMINATED: 09/17/2019*

V.

**Defendant**

| | | |
|---|---|---|
| **BP Exploration & Production, Inc.** | represented by | **Don Keller Haycraft** |
| | | Liskow & Lewis (New Orleans) |

One Shell Square
701 Poydras St.
Suite 5000
New Orleans, LA 70139-5099
504-581-7979
Email: dkhaycraft@liskow.com
*TERMINATED: 01/09/2020*
*LEAD ATTORNEY*

**David Zott**
Kirkland & Ellis, LLP (Chicago)
300 North LaSalle Street
Chicago, IL 60654
(312) 861-2000
Email: david.zott@kirkland.com
*ATTORNEY TO BE NOTICED*

**Devin C. Reid**
Liskow & Lewis (New Orleans)
One Shell Square
701 Poydras St.
Suite 5000
New Orleans, LA 70139-5099
504-581-7979
Email: dcreid@liskow.com
*ATTORNEY TO BE NOTICED*

**Kristopher Scott Ritter**
Kirkland & Ellis, LLP (Chicago)
300 North LaSalle Street
Chicago, IL 60654
312-862-7118
Email: kristopher.ritter@kirkland.com
*ATTORNEY TO BE NOTICED*

**Russell Keith Jarrett**
Liskow & Lewis (New Orleans)
One Shell Square
701 Poydras St.
Suite 5000
New Orleans, LA 70139-5099
504-581-7979
Email: rkjarrett@liskow.com
*ATTORNEY TO BE NOTICED*

**Scott C. Seiler**
Liskow & Lewis (New Orleans)

One Shell Square
701 Poydras St.
Suite 5000
New Orleans, LA 70139-5099
504-581-7979
Email: scseiler@liskow.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **BP America Production Company** | represented by | **Don Keller Haycraft**<br>(See above for address)<br>*TERMINATED: 01/09/2020*<br>*LEAD ATTORNEY* |
| | | **David Zott**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Devin C. Reid**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kristopher Scott Ritter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Russell Keith Jarrett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Scott C. Seiler**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Third Party Plaintiff**

| | | |
|---|---|---|
| **BP America Production Company** | represented by | **Don Keller Haycraft**<br>(See above for address)<br>*TERMINATED: 01/09/2020*<br>*LEAD ATTORNEY* |
| | | **David Zott**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Devin C. Reid**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Kristopher Scott Ritter**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

RE-4

**Russell Keith Jarrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott C. Seiler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Third Party Plaintiff**

**BP Exploration & Production, Inc.**         represented by   **Don Keller Haycraft**
(See above for address)
*TERMINATED: 01/09/2020*
*LEAD ATTORNEY*

**David Zott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Devin C. Reid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristopher Scott Ritter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Russell Keith Jarrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott C. Seiler**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Third Party Defendant**

**Navigators Insurance Company**         represented by   **Wilson Lewis Maloz , III**
Larzelere, Picou, Wells, Simpson, Lonero, LLC
Two Lakeway Center
3850 N. Causeway Blvd.
Suite 500
Metairie, LA 70002
(504) 834-6500
Email: wmaloz@lpwsl.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**T. Justin Simpson**
Larzelere, Picou, Wells, Simpson, Lonero, LLC

Two Lakeway Center
3850 N. Causeway Blvd.
Suite 500
Metairie, LA 70002
(504) 834-6500
Email: jsimpson@lpwsl.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

<u>**Counter Claimant**</u>

| | | |
|---|---|---|
| **BP America Production Company** | represented by | **Don Keller Haycraft** |

(See above for address)
*TERMINATED: 01/09/2020*
*LEAD ATTORNEY*

**David Zott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Devin C. Reid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristopher Scott Ritter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Russell Keith Jarrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott C. Seiler**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

| | | |
|---|---|---|
| **BP Exploration & Production, Inc.** | represented by | **Don Keller Haycraft** |

(See above for address)
*TERMINATED: 01/09/2020*
*LEAD ATTORNEY*

**David Zott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Devin C. Reid**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kristopher Scott Ritter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Russell Keith Jarrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott C. Seiler**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**National Response Corporation**     represented by  **Ivan Mauricio Rodriguez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric C. Lyttle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gary Alan Hemphill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy T. Grabill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael J. Lyle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sylvia Ester Simson**
(See above for address)
*TERMINATED: 09/17/2019*

**Counter Defendant**

**O'Brien's Response Management L.L.C.**     represented by  **Ivan Mauricio Rodriguez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric C. Lyttle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gary Alan Hemphill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy T. Grabill**
(See above for address)

ATTORNEY TO BE NOTICED

**Michael J. Lyle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sylvia Ester Simson**
(See above for address)
*TERMINATED: 09/17/2019*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/14/2019 | 1 (p.16) | COMPLAINT with jury demand against All Defendants (Filing fee $ 400 receipt number 053L-7431168) filed by O'Brien's Response Management, L.L.C., National Response Corporation. (Attachments: # 1 (p.16) Exhibit A, # 2 Exhibit B, # 3 (p.1473) Exhibit C, # 4 (p.1484) Exhibit D, # 5 (p.1488) Exhibit E, # 6 (p.1564) Exhibit F, # 7 (p.1565) Exhibit G, # 8 (p.1567) Exhibit H, # 9 (p.1571) Exhibit I, # 10 (p.1572) Exhibit J, # 11 (p.1579) Exhibit K, # 12 (p.1586) Exhibit L, # 13 (p.1593) Exhibit M, # 14 (p.1595) Exhibit N, # 15 (p.1672) Exhibit O, # 16 (p.1675) Exhibit P, # 17 (p.1678) Exhibit Q, # 18 (p.1683) Exhibit R, # 19 (p.1684) Exhibit S, # 20 (p.1699) Civil Cover Sheet, # 21 (p.1722) Summons, # 22 Summons)Attorney Jeremy T. Grabill added to party National Response Corporation(pty:pla), Attorney Jeremy T. Grabill added to party O'Brien's Response Management, L.L.C.(pty:pla).(Grabill, Jeremy) (Entered: 02/14/2019) |
| 02/15/2019 | 2 | Initial Case Assignment to Judge Carl Barbier and Magistrate Judge Joseph C. Wilkinson, Jr. (cc) (Entered: 02/15/2019) |
| 02/15/2019 | 3 (p.1473) | Notice of Related Case(s) by National Response Corporation, O'Brien's Response Management, L.L.C. of related case(s) 2:10-MD-02179-CJB-JCW. (Attachments: # 1 (p.16) Memorandum in Support)(Grabill, Jeremy) (Entered: 02/15/2019) |
| 02/15/2019 | 4 (p.1484) | Summons Issued as to BP America Production Company, BP Exploration & Production, Inc. (Attachments: # 1 (p.16) Summons)(cg) (Entered: 02/15/2019) |
| 02/19/2019 | 5 (p.1488) | PRETRIAL ORDERS #1, #11, #12 1st Amended, #25, #31, & #41 2nd Amended. Signed by Judge Carl Barbier. (Attachments: # 1 (p.16) PTO #11, # 2 PTO #12 1st Amended, # 3 (p.1473) PTO #25, # 4 (p.1484) PTO #31, # 5 (p.1488) PTO #41 2nd Amended) (gec) (Entered: 02/19/2019) |
| 02/19/2019 | 6 (p.1564) | ORDER Regarding Filing Requests for Summons and Summons Returns; ORDERED that requests for summons shall be filed in the docket for the member case, as opposed to the master docket. FURTHER ORDERED that summons returns shall not be filed into any docket, master or member, unless filing the summons return becomes necessary (for example, in connection with a motion for default judgment). When it is necessary to file a summons return, the attorney shall avoid filing the summons return as a separate, stand-alone document in the master docket. Instead, the summons return shall be filed as an exhibit to the motion, etc., to which it relates. (Doc #10204 in 10-md-2179). Signed by Judge Carl Barbier on 05/20/2013. (gec) (Entered: 02/19/2019) |
| 03/26/2019 | 7 (p.1565) | ORDERED that 25480 Motion to Lift MDL Stay is GRANTED. It is FURTHER ORDERED that O'Brien's Response Management, L.L.C., et al. v. BP Exploration & |

| | | |
|---|---|---|
| | | Production Inc., et al. (No. 19-1418) is hereby SEVERED from MDL 2179. Subsequent filings with respect to No. 19-1418 shall be in the individual docket for that case, not in the MDL master docket. It is FURTHER ORDERED that any stay imposed in Case No. 19-1418 by an order or pretrial order in MDL 2179 is LIFTED. If the plaintiffs have not already served the defendants with a summons and a copy of the complaint as contemplated in Federal Rule of Civil Procedure 4, the plaintiffs shall promptly do so. If service under Rule 4 has already occurred, then the time for defendants to respond to the complaint shall commence to run anew from the date of this Order. It is FURTHER ORDERED that the parties to Case No. 19-1418 shall participate in mediation before Daniel J. Balhoff of Perry, Balhoff, Mengis & Burns, L.L.C., whom the Court appoints as mediator for this purpose. The mediation shall occur within 90 days of the issuance of this Order. Signed by Judge Carl Barbier. (Reference: 19-1418) (originally filed in 10md2179 #25513)(gec) (Entered: 03/27/2019) |
| 03/29/2019 | 8 (p.1567) | EXPARTE/CONSENT First MOTION for Extension of Time to Answer re 1 (p.16) Complaint,,, *and/or File Responsive Pleadings* by BP America Production Company, BP Exploration & Production, Inc.. (Attachments: # 1 (p.16) Proposed Order)Attorney Don Keller Haycraft added to party BP America Production Company(pty:dft), Attorney Don Keller Haycraft added to party BP Exploration & Production, Inc.(pty:dft).(Haycraft, Don) (Entered: 03/29/2019) |
| 04/09/2019 | 9 (p.1571) | ORDER granting 8 (p.1567) Motion for Extension of Time to Answer as to BP America Production Company and BP Exploration & Production, Inc. Answer due 5/7/2019. Signed by Judge Carl Barbier on 4/9/2019. (cg) (Entered: 04/09/2019) |
| 04/24/2019 | 10 (p.1572) | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice *Michael J. Lyle* (Filing fee $ 100 receipt number 053L-7597332) by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Affidavit & Certificate of Good Standing, # 2 Proposed Order)(Grabill, Jeremy) (Entered: 04/24/2019) |
| 04/24/2019 | 11 (p.1579) | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice *Eric C. Lyttle* (Filing fee $ 100 receipt number 053L-7597372) by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Affidavit & Certificate of Good Standing, # 2 Proposed Order)(Grabill, Jeremy) (Entered: 04/24/2019) |
| 04/24/2019 | 12 (p.1586) | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice *Sylvia E. Simson* (Filing fee $ 100 receipt number 053L-7597382) by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Affidavit & Certificate of Good Standing, # 2 Proposed Order)(Grabill, Jeremy) (Entered: 04/24/2019) |
| 04/25/2019 | 13 (p.1593) | ORDER - As stated herein, IT IS ORDERED that paragraph 12 of the Third Amended Pretrial Order No. 1 APPLIES to this case. IT IS FURTHER ORDERED that Plaintiffs' Motions to Appear Pro Hac Vice (Rec. Docs. 10, 11, 12) are DENIED AS MOOT. IT IS FURTHER ORDERED that Plaintiffs are entitled to a refund of the court fees paid in connection with filing the Motions to Appear Pro Hac Vice (Rec. Docs. 10, 11, 12). Signed by Judge Carl Barbier on 4/25/2019. (cg) (Entered: 04/25/2019) |
| 05/07/2019 | 14 (p.1595) | ANSWER to 1 (p.16) Complaint *and* COUNTERCLAIM against National Response Corporation, O'Brien's Response Management L.L.C. by BP America Production Company, BP Exploration & Production, Inc..(Reid, Devin) Modified text on 5/8/2019 (cg). (Entered: 05/07/2019) |

| 05/07/2019 | 15 (p.1672) | Statement of Corporate Disclosure by BP America Production Company identifying Corporate Parent BP PLC for BP America Production Company, BP America Production Company (Reid, Devin) (Entered: 05/07/2019) |
|---|---|---|
| 05/07/2019 | 16 (p.1675) | Statement of Corporate Disclosure by BP Exploration & Production, Inc. identifying Corporate Parent BP PLC for BP Exploration & Production, Inc., BP Exploration & Production, Inc. (Reid, Devin) (Entered: 05/07/2019) |
| 05/20/2019 | 17 (p.1678) | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 14 (p.1595) Counterclaim, *and/or to File Responsive Pleadings* by National Response Corporation, O'Brien's Response Management L.L.C. (Attachments: # 1 (p.16) Proposed Order)(Grabill, Jeremy) (Entered: 05/20/2019) |
| 05/24/2019 | 18 (p.1683) | ORDER granting 17 (p.1678) Motion for Extension of Time to Answer re 14 (p.1595) Counterclaim, as to National Response Corporation and O'Brien's Response Management L.L.C. Answers due 6/18/2019. Signed by Judge Carl Barbier on 5/24/2019. (jls) (Entered: 05/24/2019) |
| 06/18/2019 | 19 (p.1684) | EXPARTE/CONSENT Joint MOTION for Protective Order by BP America Production Company, BP Exploration & Production, Inc.. Motion(s) referred to Joseph C. Wilkinson, Jr. (Attachments: # 1 (p.16) Proposed Order)(Haycraft, Don) (Entered: 06/18/2019) |
| 06/18/2019 | 20 (p.1699) | Partial MOTION to Dismiss *BP's Counterclaims* by National Response Corporation, O'Brien's Response Management L.L.C.. Motion(s) will be submitted on 7/17/2019. (Attachments: # 1 (p.16) Memorandum in Support, # 2 Notice of Submission)(Grabill, Jeremy) Modified on 6/19/2019 (cg). (Entered: 06/18/2019) |
| 06/18/2019 | 21 (p.1722) | Request/Statement of Oral Argument by National Response Corporation, O'Brien's Response Management L.L.C. regarding 20 (p.1699) MOTION to Dismiss *BP's Counterclaims* (Grabill, Jeremy) (Entered: 06/18/2019) |
| 06/19/2019 | 22 | NOTICE by Clerk re 21 (p.1722) Request/Statement of Oral Argument re 20 (p.1699) MOTION to Dismiss BP Counterclaims. Pursuant to Local Rule 78.1, this motion is set for hearing with oral argument on 7/17/2019 at 9:30 AM before Judge Carl J. Barbier. (cg) (Entered: 06/19/2019) |
| 06/20/2019 | 23 (p.1725) | CONSENT PROTECTIVE ORDER. Signed by Magistrate Judge Joseph C. Wilkinson, Jr on June 20, 2019.(mp) (Entered: 06/20/2019) |
| 06/24/2019 | 24 (p.1737) | ORDER - The Court previously ordered the parties to participate in mediation before Dan Balhoff. (Rec. Doc. 7). On June 24, 2019, the Court held a brief telephone conference with the mediator to discuss the parties' progress. At the mediator's request, the Court will extend the deadline for the parties to conduct mediation. Accordingly, IT IS ORDERED that the period for the parties to engage in mediation before Dan Balhoff is EXTENDED up to and including August 23, 2019. IT IS FURTHER ORDERED that the submission date on the Responders' Partial Motion to Dismiss BP's Counterclaims (Rec. Doc. 20) is CONTINUED until Wednesday, September 25, 2019 at 9:30 a.m. IT IS FURTHER ORDERED that oral argument on the Responders' Partial Motion to Dismiss BP's Counterclaims (Rec. Docs. 21, 22) is CANCELLED. Signed by Judge Carl Barbier on 6/24/2019.(cg) (Entered: 06/24/2019) |
| 07/31/2019 | 25 (p.1738) | ORDER - The Court previously ordered the parties to participate in mediation before Dan Balhoff. (Rec. Doc. 7). At the mediator's request, IT IS ORDERED that the period for the parties to engage in mediation is EXTENDED up to and including |

| | | |
|---|---|---|
| | | October 22, 2019. IT IS FURTHER ORDERED that the Responders' Partial Motion to Dismiss BP's Counterclaims (Rec. Doc. 20) is DENIED WITHOUT PREJUDICE. If mediation is unsuccessful, Responders' may file a new notice of submission for the motion, and the Court will consider and decide the motion accordingly. Signed by Judge Carl Barbier on 7/31/2019. (cg) (Entered: 07/31/2019) |
| 09/12/2019 | 26 (p.1739) | EXPARTE/CONSENT MOTION to Withdraw Sylvia E. Simson as Attorney by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Proposed Order)(Grabill, Jeremy) (Entered: 09/12/2019) |
| 09/12/2019 | 27 (p.1743) | EXPARTE/CONSENT MOTION for Status Conference by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Proposed Order)(Grabill, Jeremy) (Entered: 09/12/2019) |
| 09/17/2019 | 28 (p.1747) | ORDER granting 26 (p.1739) Motion to Withdraw as Attorney. Attorney Sylvia E. Simson terminated. Signed by Judge Carl Barbier on 9/16/19. (ko) (Entered: 09/17/2019) |
| 09/26/2019 | 29 (p.1748) | ORDER granting 27 (p.1743) MOTION for Status Conference. An in-court status conference is scheduled for Wednesday, November 6, 2019 at 9:30 a.m. IT IS FURTHER ORDERED that the parties shall file joint or separate proposed initial case management orders by no later than Wednesday, October 30, 2019. Signed by Judge Carl Barbier on 9/26/2019.(cg) (Entered: 09/26/2019) |
| 10/15/2019 | 30 (p.1749) | EXPARTE/CONSENT MOTION for Leave to File *First Amended Counterclaim and Third Party Complaint* by BP America Production Company, BP Exploration & Production, Inc.. (Attachments: # 1 (p.16) Proposed Order, # 2 Exhibit 1 - BP's Proposed Amended Pleading, # 3 (p.1473) Exhibit A of BP's Amended Pleading, # 4 (p.1484) Exhibit B of BP's Amended Pleading, # 5 (p.1488) Exhibit C of BP's Amended Pleading, # 6 (p.1564) Exhibit D of BP's Amended Pleading, # 7 (p.1565) Exhibit E of BP's Amended Pleading)(Reid, Devin) (Entered: 10/15/2019) |
| 10/16/2019 | 31 (p.1952) | ORDER granting 30 (p.1749) Motion for Leave to File Amended Counterclaim and Third Party Complaint. Signed by Judge Carl Barbier on 10/16/19. (ko) (Entered: 10/16/2019) |
| 10/16/2019 | 32 (p.1953) | Amended COUNTERCLAIM against National Response Corporation, O'Brien's Response Management L.L.C., THIRD PARTY COMPLAINT against Navigators Insurance Company filed by BP America Production Company, BP Exploration & Production, Inc. (Attachments: # 1 (p.16) Exhibit A, # 2 Exhibit B, # 3 (p.1473) Exhibit C, # 4 (p.1484) Exhibit D, # 5 (p.1488) Exhibit E)(ko) (Entered: 10/16/2019) |
| 10/18/2019 | 33 (p.2146) | ORDER - At plaintiffs' request and with the consent of the other parties, IT IS ORDERED that the status conference previously scheduled for November 6, 2019 at 9:30 a.m. (Rec. Doc. 29) is RESCHEDULED for Monday, November 18, 2019 at 9:30 a.m. IT IS FURTHER ORDERED that the parties shall file joint or separate proposed initial case management orders by no later than Monday, November 11, 2019. Signed by Judge Carl Barbier on 10/18/2019.(cg) (Entered: 10/18/2019) |
| 10/22/2019 | 34 (p.2147) | ORDER - Due to a conflict with the Court's schedule, IT IS ORDERED that the status conference previously scheduled for Monday, November 18, 2019 at 9:30 a.m. (Rec. Doc. 33) is RESCHEDULED for Wednesday, November 20, 2019 at 9:30 a.m. IT IS FURTHER ORDERED that the parties shall file joint or separate proposed initial case management orders by no later than Wednesday, November 13, 2019. Signed by Judge Carl Barbier on 10/22/2019.(cg) (Entered: 10/22/2019) |

| 10/28/2019 | 35 (p.2148) | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 32 (p.1953) Counterclaim, by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Proposed Order)(Grabill, Jeremy) (Entered: 10/28/2019) |
| --- | --- | --- |
| 10/29/2019 | 36 (p.2152) | ORDER granting 35 (p.2148) Motion for Extension of Time to Answer re 32 (p.1953) Counterclaim, as to National Response Corporation, O'Brien's Response Management L.L.C. answer due 11/20/2019. Signed by Judge Carl Barbier on 10/29/19. (ko) (Entered: 10/29/2019) |
| 11/13/2019 | 37 (p.2153) | NOTICE by BP America Production Company, BP Exploration & Production, Inc. *of Filing of Proposed Initial Case Management Order*. (Attachments: # 1 (p.16) Proposed Initial Case Management Order)(Reid, Devin) (Entered: 11/13/2019) |
| 11/13/2019 | 38 (p.2168) | NOTICE by National Response Corporation, O'Brien's Response Management L.L.C. *and Navigators Insurance Company of Filing of Proposed Case Management Order*. (Attachments: # 1 (p.16) Proposed Case Management Order)(Grabill, Jeremy) (Entered: 11/13/2019) |
| 11/20/2019 | 39 (p.2176) | MOTION to Dismiss *BP's Amended Counterclaims* by National Response Corporation, O'Brien's Response Management L.L.C.. Motion(s) will be submitted on 12/18/2019. (Attachments: # 1 (p.16) Memorandum in Support, # 2 Notice of Submission)(Grabill, Jeremy) (Entered: 11/20/2019) |
| 11/20/2019 | 40 (p.2202) | Request/Statement of Oral Argument by National Response Corporation, O'Brien's Response Management L.L.C. regarding 39 (p.2176) MOTION to Dismiss *BP's Amended Counterclaims* (Grabill, Jeremy) (Entered: 11/20/2019) |
| 11/20/2019 | 42 (p.2205) | Minute Entry for proceedings held before Judge Carl Barbier: Status Conference held on 11/20/2019. The Court held a status conference to consider the parties' competing case management proposals. ORDERED that the Court will adopt BP's proposal (Rec. Doc. 37). ORDERED that Responders shall file an amended complaint within 21 days. (Attachments: # 1 (p.16) Attachment) (cg) (Entered: 11/21/2019) |
| 11/21/2019 | 41 | NOTICE by Clerk re 40 (p.2202) Request/Statement of Oral Argument re 39 (p.2176) MOTION TO Dismiss BP's Amended Counterclaims. Pursuant to Local Rule 78.1, this motion is set for hearing with oral argument on 12/18/2019 at 9:30 AM before Judge Carl J. Barbier. (cg) (Entered: 11/21/2019) |
| 11/21/2019 | 43 (p.2207) | INITIAL CASE MANAGEMENT ORDER. Signed by Judge Carl Barbier on 11/20/2019.(cg) (Entered: 11/21/2019) |
| 11/27/2019 | 44 (p.2210) | EXPARTE/CONSENT MOTION to Modify Briefing Schedule for Responders' Partial Motion to Dismiss BP's Amended Counterclaims by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Proposed Order)(Grabill, Jeremy) (Entered: 11/27/2019) |
| 12/02/2019 | 45 (p.2213) | ORDER granting 44 (p.2210) MOTION to Modify Briefing Schedule for Responders' Partial Motion to Dismiss BP's Amended Counterclaims. BP shall file its opposition to the Responders' Partial Motion to Dismiss BP's Amended Counterclaims on or before December 20, 2019. The Responders shall file their reply, if any, in response to BPs opposition on or before January 10, 2020; and The December 18, 2019 submission date on the Responders' Partial Motion to Dismiss BP's Amended Counterclaims (Rec. Doc. 39) is hereby CANCELLED and the Responders' Request for Oral Argument (Rec. Doc. 40) is DENIED. The |

20-30364.12

| | | |
|---|---|---|
| | | Responders' Partial Motion to Dismiss will be considered on the briefs unless the Court instructs the parties otherwise. Signed by Judge Carl Barbier on 12/2/2019.(cg) (Entered: 12/02/2019) |
| 12/11/2019 | 46 (p.2214) | EXPARTE/CONSENT MOTION for Leave to File *First Amended Complaint Pursuant to Initial Case Management Order* by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Proposed Order, # 2 First Amended Complaint, # 3 (p.1473) Exhibit A, # 4 (p.1484) Exhibit B, # 5 (p.1488) Exhibit C, # 6 (p.1564) Exhibit D, # 7 (p.1565) Exhibit E, # 8 (p.1567) Exhibit F, # 9 (p.1571) Exhibit G, # 10 (p.1572) Exhibit H, # 11 (p.1579) Exhibit I, # 12 (p.1586) Exhibit J, # 13 (p.1593) Exhibit K, # 14 (p.1595) Exhibit L, # 15 (p.1672) Exhibit M, # 16 (p.1675) Exhibit N, # 17 (p.1678) Exhibit O, # 18 (p.1683) Exhibit P, # 19 (p.1684) Exhibit Q, # 20 (p.1699) Exhibit R, # 21 (p.1722) Exhibit S)(Grabill, Jeremy) (Entered: 12/11/2019) |
| 12/12/2019 | 47 (p.3678) | ORDER granting 46 (p.2214) Motion for Leave to File First Amended Complaint. Signed by Judge Carl Barbier on 12/12/2019. (clw) (Entered: 12/12/2019) |
| 12/12/2019 | 48 (p.3679) | FIRST AMENDED COMPLAINT with Jury Demand against BP America Production Company, BP Exploration & Production, Inc. filed by National Response Corporation, O'Brien's Response Management L.L.C. (Attachments: # 1 (p.16) Exhibit, # 2 Exhibit, # 3 (p.1473) Exhibit, # 4 (p.1484) Exhibit, # 5 (p.1488) Exhibit, # 6 (p.1564) Exhibit, # 7 (p.1565) Exhibit, # 8 (p.1567) Exhibit, # 9 (p.1571) Exhibit, # 10 (p.1572) Exhibit, # 11 (p.1579) Exhibit, # 12 (p.1586) Exhibit, # 13 (p.1593) Exhibit, # 14 (p.1595) Exhibit, # 15 (p.1672) Exhibit, # 16 (p.1675) Exhibit, # 17 (p.1678) Exhibit, # 18 (p.1683) Exhibit, # 19 (p.1684) Exhibit)(clw) (Entered: 12/12/2019) |
| 12/16/2019 | 49 (p.5138) | ANSWER to 32 (p.1953) Third Party Complaint with Jury Demand by Navigators Insurance Company. (Attachments: # 1 (p.16) Exhibit A, # 2 Exhibit B, # 3 (p.1473) Exhibit C, # 4 (p.1484) Exhibit D, # 5 (p.1488) Exhibit E, # 6 (p.1564) Exhibit F)Attorney Wilson Lewis Maloz, III added to party Navigators Insurance Company(pty:3pd).(Maloz, Wilson) Modified text on 12/17/2019 (cg). (Entered: 12/16/2019) |
| 12/16/2019 | 50 (p.5404) | Statement of Corporate Disclosure by Navigators Insurance Company. Parent companies are The Navigators Group, Inc., and Hartford Financial Services Group, Inc. (Maloz, Wilson) Modified parent companies on 12/17/2019 (cg). (Entered: 12/16/2019) |
| 12/20/2019 | 51 (p.5406) | RESPONSE/MEMORANDUM in Opposition filed by BP America Production Company, BP Exploration & Production, Inc. re 39 (p.2176) MOTION to Dismiss *BP's Amended Counterclaims* . (Reid, Devin) (Entered: 12/20/2019) |
| 01/10/2020 | 52 (p.5423) | ANSWER to 48 (p.3679) Amended Complaint,, *of O'Brien's Response Management LLC and National Response Corporation* by BP America Production Company, BP Exploration & Production, Inc..(Reid, Devin) (Entered: 01/10/2020) |
| 01/10/2020 | 53 (p.5491) | ANSWER to 32 (p.1953) Counterclaim, by National Response Corporation, O'Brien's Response Management L.L.C..(Grabill, Jeremy) (Entered: 01/10/2020) |
| 01/10/2020 | 54 (p.5533) | EXPARTE/CONSENT MOTION for Leave to File *Reply Memorandum in Support of Partial Motion to Dismiss BP's Amended Counterclaims* by National Response Corporation, O'Brien's Response Management L.L.C.. (Attachments: # 1 (p.16) Proposed Order, # 2 Proposed Reply Memorandum)(Grabill, Jeremy) (Entered: 01/10/2020) |

20-30364.13

| | | |
|---|---|---|
| 01/14/2020 | 55 (p.5552) | ORDER granting 54 (p.5533) Motion for Leave to File Reply. Signed by Judge Carl Barbier on January 14, 2020. (mp) (Entered: 01/14/2020) |
| 01/14/2020 | 56 (p.5553) | REPLY to Response to Motion filed by National Response Corporation, O'Brien's Response Management L.L.C. re 39 (p.2176) MOTION to Dismiss *BP's Amended Counterclaims*. (mp) (Entered: 01/14/2020) |
| 01/21/2020 | 57 (p.5569) | ORDER AND REASONS granting in part and denying in part 39 (p.2176) Motion to Dismiss. IT IS ORDERED that the Responders' Partial Motion to Dismiss BP's Amended Counterclaims (Rec. Doc. 39) is GRANTED IN PART, and BP's claim for unjust enrichment against the Responders and the accompanying request for disgorgement (Count IV of BP's Amend. Counterclaim, Rec. Doc. 32) are DISMISSED. IT IS FURTHER ORDERED that the Responders' Partial Motion to Dismiss BP's Amended Counterclaim (Rec. Doc. 39) is, in all other respects, DENIED. Signed by Judge Carl Barbier on 1/21/2020. (cg) (Entered: 01/21/2020) |
| 02/14/2020 | 58 (p.5571) | MOTION for Judgment on the Pleadings by National Response Corporation, O'Brien's Response Management L.L.C.. Motion(s) will be submitted on 3/25/2020. (Attachments: # 1 (p.16) Memorandum in Support, # 2 Notice of Submission)(Grabill, Jeremy) (Entered: 02/14/2020) |
| 02/14/2020 | 59 (p.5609) | MOTION for Judgment on the Pleadings by BP America Production Company, BP Exploration & Production, Inc.. Motion(s) will be submitted on 3/25/2020. (Attachments: # 1 (p.16) Notice of Submission, # 2 Memorandum in Support, # 3 (p.1473) Exhibit A, # 4 (p.1484) Exhibit B, # 5 (p.1488) Exhibit C, # 6 (p.1564) Exhibit D, # 7 (p.1565) Exhibit E)(Reid, Devin) (Entered: 02/14/2020) |
| 02/14/2020 | 60 (p.5809) | MOTION for Judgment on the Pleadings by Navigators Insurance Company. Motion(s) will be submitted on 3/25/2020. (Attachments: # 1 (p.16) Memorandum in Support, # 2 Exhibit 1, # 3 (p.1473) Exhibit 2, # 4 (p.1484) Exhibit 3, # 5 (p.1488) Exhibit 4, # 6 (p.1564) Exhibit 5, # 7 (p.1565) Exhibit 6, # 8 (p.1567) Exhibit 7, # 9 (p.1571) Exhibit 8, # 10 (p.1572) Exhibit 9, # 11 (p.1579) Notice of Submission)(Maloz, Wilson) (Entered: 02/14/2020) |
| 03/16/2020 | 61 (p.6661) | RESPONSE/MEMORANDUM in Opposition filed by BP America Production Company, BP Exploration & Production, Inc. re 60 (p.5809) MOTION for Judgment on the Pleadings , 58 (p.5571) MOTION for Judgment on the Pleadings . (Attachments: # 1 (p.16) Exhibit A)(Reid, Devin) (Main Document 61 replaced on 3/17/2020) (cg). (Attachment 1 replaced on 3/17/2020) (cg). (Entered: 03/16/2020) |
| 03/16/2020 | 62 (p.6705) | RESPONSE/MEMORANDUM in Opposition filed by National Response Corporation, O'Brien's Response Management L.L.C.. re 60 (p.5809) MOTION for Judgment on the Pleadings , 59 (p.5609) MOTION for Judgment on the Pleadings . (Grabill, Jeremy) (Entered: 03/16/2020) |
| 03/16/2020 | 63 (p.6737) | RESPONSE/MEMORANDUM in Opposition filed by Navigators Insurance Company re 59 (p.5609) MOTION for Judgment on the Pleadings *by BP*. (Attachments: # 1 (p.16) Exhibit A)(Maloz, Wilson) (Entered: 03/16/2020) |
| 05/04/2020 | 64 (p.6763) | ORDER AND REASONS - As stated herein, IT IS ORDERED that the Responders' and Navigators' Motions for Judgment on the Pleadings (Rec. Docs. 58, 60) is GRANTED. IT FURTHER ORDERED that BP's Motion for Judgment on the Pleadings (Rec. Doc. 59) is DENIED. IT IS FURTHER ORDERED that within seven days the Responders and Navigators shall jointly submit a proposed judgment in accordance with the Court's rulings. Signed by Judge Carl Barbier on 5/4/20. (cg) (Entered: 05/04/2020) |

20-30364.14

| 05/07/2020 | 65 (p.6783) | ORDER - Correction to Order & Reasons of May 4, 2020 (Rec. Doc. 64). Accordingly, IT IS ORDERED that, pursuant to Fed. R. Civ. P. 60(a), the Order & Reasons of May 4, 2020 (Rec. Doc. 64) is CORRECTED as stated herein. Attached to this Order is a revised version of the May 4, 2020 Order & Reasons that makes this correction as well as other, non-substantive changes. Signed by Judge Carl Barbier on 5/7/20. (Attachments: # 1 (p.16) Revised Order and Reasons)(cg) (Entered: 05/07/2020) |
|---|---|---|
| 05/11/2020 | 66 (p.6804) | EXPARTE/CONSENT MOTION for Judgment by National Response Corporation, O'Brien's Response Management L.L.C., *and by Navigators Insurance Company.* (Attachments: # 1 (p.16) Proposed Judgment)(Grabill, Jeremy) Modified event and text on 5/12/2020 (cg). (Entered: 05/11/2020) |
| 05/12/2020 | 67 (p.6810) | JUDGMENT - IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of OBrien's Response Management, L.L.C. ("O'Brien's"), National Response Corporation ("NRC"), and Navigators Insurance Company ("Navigators"), and against BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") as stated herein. Signed by Judge Carl Barbier on 5/12/20.(cg) (Entered: 05/12/2020) |
| 06/11/2020 | 68 (p.6812) | NOTICE OF APPEAL by BP America Production Company, BP Exploration & Production, Inc. as to 65 (p.6783) Order, 67 (p.6810) Judgment, 64 (p.6763) Order on Motion for Judgment on the Pleadings,,,,,. (Filing fee $ 505, receipt number ALAEDC-8348433.) (Attachments: # 1 (p.16) Exhibit A, # 2 Exhibit B, # 3 (p.1473) Exhibit C)(Reid, Devin) (Entered: 06/11/2020) |

O'Brien's Response Management, L.L.C. et al v. BP Exploration & Production Inc. et al (2:19-cv-01418-CJB-JCW)

# TAB 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| O'BRIEN'S RESPONSE MANAGEMENT, L.L.C. and NATIONAL RESPONSE CORPORATION, | ) ) ) | Case No. 19-1418 |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| versus | ) ) | SECTION:  J(2) |
| BP EXPLORATION & PRODUCTION INC. and BP AMERICA PRODUCTION COMPANY, | ) ) ) ) | Hon. Judge Barbier Magistrate Judge Wilkinson |
| Defendants/Counterclaim Plaintiffs | ) ) | |
| BP EXPLORATION & PRODUCTION INC. and BP AMERICA PRODUCTION COMPANY, | ) ) ) ) | |
| Third Party Plaintiffs, | ) ) | |
| versus | ) ) | |
| NAVIGATORS INSURANCE COMPANY, | ) ) | |
| Third Party Defendant. | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that BP Exploration & Production Inc. and BP America Production Company in *O'Brien's Response Management, L.L.C., et al. v. BP Exploration & Production Inc., et al.*, No. 19-cv-01418, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Court's Judgment entered on May 12, 2020 (Rec. Doc. 67) (attached as Exhibit A), and all antecedent opinions and orders, including the Order & Reasons issued on May 4, 2020 (Rec. Doc. 64) (attached as Exhibit B) and issued in corrected form on May 7, 2020 (Rec. Doc. 65) (attached as Exhibit C).  This appeal is timely filed under Federal Rule of Appellate Procedure

4(a)(1)(A) because it was filed within 30 days of the May 12, 2020 Judgment.


June 11, 2020                                    Respectfully submitted,


                                                /s/  Devin C. Reid
                                                R. Keith Jarrett (Bar #16984)
                                                Scott Seiler (Bar #19784)
                                                Devin C. Reid (Bar #32645)
                                                **LISKOW & LEWIS**
                                                One Shell Square, Suite 5000
                                                701 Poydras Street
                                                New Orleans, LA 70139-5099
                                                Telephone: (504) 581-7979
                                                Facsimile: (504) 556-4108
                                                rkjarrett@liskow.com
                                                scseiler@liskow.com
                                                dcreid@liskow.com

                                                -and-

                                                David J. Zott
                                                (david.zott@kirkland.com)
                                                Brenton A. Rogers
                                                (brenton.rogers@kirkland.com)
                                                Kristopher S. Ritter
                                                (kristopher.ritter@kirkland.com)
                                                **KIRKLAND & ELLIS LLP**
                                                300 N. LaSalle
                                                Chicago, IL  60654
                                                Telephone: (312) 862-2000
                                                Facsimile: (312) 862-2200

                                                *Attorneys for BP Exploration & Production*
                                                *Inc. and BP America Production Company*

20-30364.6813

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2020, the above and foregoing pleading was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

<div align="center" style="margin-left:50%">

*/s/ Devin C. Reid*
Devin C. Reid

</div>

# TAB 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **O'BRIEN'S RESPONSE MANAGEMENT, L.L.C. and NATIONAL RESPONSE CORPORATION,**<br><br>         Plaintiffs/Counterclaim Defendants,<br>**v.**<br><br>**BP EXPLORATION & PRODUCTION INC. and BP AMERICA PRODUCTION COMPANY**,<br><br>         Defendants/Counterclaim Plaintiffs/Third Party Plaintiffs,<br>**v.**<br><br>**NAVIGATORS INSURANCE COMPANY**,<br><br>         Third Party Defendant. | **CIVIL ACTION NO. 19-01418**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAG. JUDGE WILKINSON** |

**JUDGMENT**

For the reasons stated in the Court's Order dated January 21, 2020 (Rec. Doc. 57) and Order & Reasons dated May 4, 2020 (Rec. Doc. 64), as revised on May 7, 2020 (Rec. Doc. 65-1);[1]

**IT IS ORDERED, ADJUDGED, AND DECREED** that there be judgment in favor of O'Brien's Response Management, L.L.C. ("O'Brien's"), National Response Corporation ("NRC"), and Navigators Insurance Company ("Navigators"), and against BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") as follows:

    A. The Court **DECLARES** that O'Brien's and NRC do not owe BP indemnity or contribution in connection with any B3 claim, including any such claim pursued pursuant to the Medical Settlement's BELO or opt-out provisions;

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in the Court's Order & Reasons dated May 4, 2020 (Rec. Doc. 64), as revised on May 7, 2020 (Rec. Doc. 65-1).

20-30364.6810

B. The Court further **DECLARES** that the MGL and COPS Policies satisfied O'Brien's contractual obligation to make BP an additional insured with respect to $2 million in CGL insurance and, alternatively, that BP's breach-of-contract claim against O'Brien's is untimely and barred by the statute of limitations;

C. The Court further **DECLARES** that BP is not an additional insured on the Bumbershoot Policy and First Excess Policy underwritten by Navigators;

D. BP's Counterclaims (Rec. Doc. 14) and Amended Counterclaim and Third Party Complaint (Rec. Doc. 32) are **DISMISSED WITH PREJUDICE**; and

E. Pursuant to the terms of the applicable contracts, BP shall pay to O'Brien's reasonable attorneys' fees, costs, expenses, and interest that O'Brien's incurred in this matter, with the specific amount to be determined later.

New Orleans, Louisiana this 12th day of May, 2020.

**UNITED STATES DISTRICT JUDGE**

20-30364.6811

# TAB 4

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| O'BRIEN'S RESPONSE MANAGEMENT, L.L.C., et al. | * | CIVIL ACTION |
| | * | No. 19-CV-01418 |
| v. | | |
| | * | SECTION: J(2) |
| BP EXPLORATION & PRODUCTION INC., et al. | * | JUDGE BARBIER |
| | * | MAG. JUDGE WILKINSON |

## ORDER
### [Correction to Order & Reasons of May 4, 2020 (Rec. Doc. 64)]

Part III(C) of the Order & Reasons of May 4, 2020 (Rec. Doc. 64) addressed indemnification for the B3 cases. Near the end of that discussion the Court stated that "almost five years" passed between the opt out deadline (November 2012) and BP's tender of the B3 cases (March 2019), when in fact over six years had passed.

Accordingly,

IT IS ORDERED that, pursuant to Fed. R. Civ. P. 60(a), the Order & Reasons of May 4, 2020 (Rec. Doc. 64) is CORRECTED as follows: On page 13, in the sentence,

> The Court finds that waiting almost five years after the opt out deadline to finally tender these claims to O'Brien violated the express provision that [BP] provide O'Brien with prompt notice.

the phrase "almost five years" is deleted and replaced with "over six years."

Attached to this Order is a revised version of the May 4, 2020 Order & Reasons that makes this correction as well as other, non-substantive changes.

New Orleans, Louisiana, this 7th day of May, 2020.

_____
United States District Judge

20-30364.6837

Exhibit C

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| O'BRIEN'S RESPONSE MANAGEMENT, L.L.C., et al. | * | CIVIL ACTION |
| | * | No. 19-CV-01418 |
| v. | * | SECTION: J(2) |
| BP EXPLORATION & PRODUCTION INC., et al. | * | JUDGE BARBIER |
| | * | MAG. JUDGE WILKINSON |

## ORDER & REASONS (REVISED)

Before the Court are cross motions for judgment on the pleadings under Rule 12(c). (Rec. Docs. 58, 59, 60). These motions present two overarching questions: First, are O'Brien's Response Management, L.L.C. ("O'Brien") and National Response Corporation ("NRC," and together with O'Brien, "Responders") contractually required to indemnify BP Exploration & Production Inc. and BP America Production Company (together, "BP") against personal injury claims by the Responders' employees (and the Responders' subcontractors' employees)? Second, is BP an additional insured on two of O'Brien's insurance policies? For the reasons explained below, the Court answers both in the negative.

## I. BACKGROUND

### A. The DEEPWATER HORIZON/Macondo Well Oil Spill, the Responders' Contracts, and the Cleanup Workers' Chemical Exposure Claims

On April 20, 2010, a blowout, explosion, and fire occurred aboard the semi-submersible drilling rig DEEPWATER HORIZON as it was in the process of temporarily abandoning a well, known as Macondo, that it had drilled some 50 miles

20-30364.6838

off the coast of Louisiana. These events resulted in a massive oil spill in the Gulf of Mexico. BP, the majority owner of the well and a designated "responsible party" under the Oil Pollution Act of 1990, 33 U.S.C. § 2701, et seq., engaged the Responders to clean up the affected area.

Each of the Responders had a contract with BP. BP's contract with O'Brien ("the O'Brien Contract," Rec. Docs. 59-3 & 59-5) contained reciprocal indemnity provisions that required O'Brien and BP to indemnify each other against personal injury claims by employees in the indemnitor's "group," regardless of who may be at fault. (O'Brien Contract §§ 11.02.01, 11.03.01). The O'Brien Contract also required O'Brien to maintain certain types of insurance and name BP as an additional insured. (*Id.* §§ 12.01, 12.02).

The contract between NRC and BP ("the NRC Contract," Rec. Doc. 59-4) also contained an indemnity provision, but its terms were very different from the O'Brien Contract. Specifically, NRC was required to indemnify BP only to the extent a claim was caused by NRC's gross negligence or willful misconduct. (NRC Contract § 9(1)). Meanwhile, BP agreed to indemnify NRC against any claim to the extent it was caused by BP's failure to comply with applicable law, a term of the agreement, or BP's gross negligence or willful misconduct. (*Id.* § 9(2)(a)). Furthermore, the NRC Contract stated that

> [NRC] shall be entitled to the protection of Responder Immunity Law
> and nothing herein shall be construed to allow [BP] to recover by way of
> contribution, indemnity or otherwise from [NRC] . . . any amounts for
> which [BP] is liable to or has paid to third parties and for which [NRC]
> would have no liability under the Responder Immunity law applicable
> in the jurisdiction where the Discharge and/or Response Activities have

20-30364.6839

occurred.

(*Id.* § 7(4)). "Responder Immunity Law" is defined in the NRC Contract as "Federal Law or State Law which provides immunity from liability to those who respond to Discharges for the purpose of attempting to contain and remove Oil from the water, beaches or shoreline." (*Id.* § 1). Finally, the NRC Contract did not require NRC to name BP as an additional insured on any of its policies, unlike the O'Brien Contract.

The Responders employed, directly or through subcontractors, thousands of workers to perform the cleanup. In the summer of 2010, cleanup workers began to file lawsuits claiming that they were exposed to oil and/or other chemicals during the response that caused them to develop various illnesses or injuries.[1] Thousands of cleanup workers eventually would make similar claims. Some of these claims would later give rise to the instant dispute over contractual indemnification and BP's status as an additional insured.

### B.   MDL 2179 and the B3 Claims

Multidistrict Litigation No. 2179 ("MDL 2179" or simply "MDL") was created and assigned to this Court in August of 2010. Nearly all federal cases relating to the DEEPWATER HORIZON/Macondo Well disaster have been consolidated with the MDL.[2] In October of 2010, the Court established eight separate "pleading bundles"

---

[1] Some cleanup workers also brought claims for non-exposure physical injuries, such as a slip and fall on a vessel. These types of claims make up only a small percentage of the total cleanup worker claims, however. Therefore, the Court focuses on the chemical exposure claims.

[2] The instant case was initially consolidated with MDL 2179, but was deconsolidated when the Court granted the Responders' motion to lift the MDL stay. (Rec. Doc. 7). The Court took the extra step of deconsolidation not because this case is unrelated to the MDL, but because the Court thought it better for organizational purposes if the filings for this matter were made in its individual docket, 19-1418, rather than scattered across the voluminous master docket for the MDL, 10-md-2179.

20-30364.6840

for different categories of claims to facilitate the effective administration of the MDL. (No. 10-md-2179, Rec. Doc. 569). One of these was the "B3 bundle," defined to include "all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010." (No. 10-md-2179, Rec. Doc. 983 at 2). "B3 plaintiff/claim/case" refers to a plaintiff, claim, or case in this bundle. In December of 2010, the Plaintiffs' Steering Committee ("PSC") filed the "B3 Master Complaint," which alleged, inter alia, chemical exposure personal injury claims on behalf of cleanup workers and other individuals, and named BP, the Responders, and others as defendants. (No. 10-md-2179, Rec. Docs. 881, 1812). Plaintiffs could join the B3 Master Complaint by filing a "short form joinder" with the Court. (10-md-2179, Rec. Docs. 982 & 983 at 4). Thousands did. (*See generally* No. 10-8888). Plaintiffs who filed their own complaints that alleged claims meeting the B3 definition were also deemed to be within the B3 bundle.

In 2010 and 2011, the Responders demanded that BP indemnify them against some of the B3 claims pursuant to their respective contracts. In May of 2011, BP and the Responders came to an agreement whereby BP reimbursed the Responders for legal fees and expenses for certain B3 claims. In contrast, BP did not demand indemnification from the Responders at this time. It would not begin to do so until 2017.

## C.    The Medical Settlement and the BELO Cases

In 2012, BP and the PSC (who later became Class Counsel) agreed to the Medical Benefits Class Action Settlement Agreement ("Medical Settlement" or simply

20-30364.6841

"the Settlement"), which was intended to resolve many of the chemical exposure claims in the B3 bundle. (10-md-2179, Rec. Doc. 6427). Cleanup workers were included in settlement class unless they opted out. Under the Settlement, certain conditions or illnesses that were diagnosed before April 16, 2012—known as "Specified Physical Conditions" or "SPC"—were paid pursuant to a compensation matrix. Conditions that are diagnosed after April 16, 2012 are not paid under the SPC matrix. Instead, the Medical Settlement permits the class member to file a new individual lawsuit against BP for such "later-manifested" illnesses through a process known as the Back-End Litigation Option ("BELO"). A BELO lawsuit is subject to a number of special rules and procedures, some which are discussed later in this opinion.

The Court approved the Medical Settlement in January of 2013. (Rec. Docs. 8217, 8218). It became effective in February of 2014, when the last appeal was voluntarily dismissed. The first BELO lawsuit was filed in December of 2014. (*Wilson v. BP*, No. 14-2730). BELO cases slowly trickled in for the next few years. 2018 then brought a surge of BELO cases that continued through much of 2019. To date, around 4,700 BELO cases have been filed. New BELO cases continue to be filed, though at a much lower rate than occurred in 2018-2019.

The Responders are not signatories to the Medical Settlement, nor did they participate in its negotiation. The Responders are, however, listed among the Settlement's "Released Parties," meaning class members may not sue the Responders for claims released by the Settlement, particularly chemical exposure personal injury

20-30364.6842

claims. Class members are also barred from suing the Responders in a BELO lawsuit; only BP may be named as a defendant. Nevertheless, the Medical Settlement purports to preserve BP's ability to seek indemnification from another entity. (*See* Medical Settlement § XVI.K ("Except as provided in Section XXIX.L, this RELEASE is not intended to prevent BP from exercising its rights of contribution, subrogation, or indemnity under any law.")).

### D.   B3 Claims Remaining After the Medical Settlement

Not all B3 claims were resolved by the Medical Settlement. Notably, cleanup workers who opted out in favor of pursuing their claims through litigation remained part of the B3 bundle.

As mentioned, many B3 claims were asserted directly against the Responders. The Responders (along with other entities involved in the oil spill response) argued that they were entitled to derivative immunity under the Clean Water Act and the Federal Tort Claims Act. The Court first addressed these arguments in 2011, when it ruled on motions to dismiss the B3 Master Complaint. (No. 10-md-2179, Rec. Doc. 4209). The Court held that the Responders' defenses, although certainly plausible, were not established on the face of the complaint and therefore could not succeed on a motion to dismiss. The Responders renewed their arguments through motions for summary judgment, which the Court granted in 2016. (No. 10-md-2179, Rec. Docs. 21406, 15853). Consequently, the B3 plaintiffs' claims against the Responders were dismissed. B3 claims against BP, however, remained.

20-30364.6843

In 2017, the Court issued Pretrial Order No. 63, which focused on the remaining B3 cases. (No. 10-md-2179, Rec. Doc. 22295). Noting that the B3 Master Complaint had served its purpose, the Court dismissed it and required all remaining plaintiffs in the B3 bundle (i.e., plaintiffs with B3 claims that were not released by the Medical Settlement) to file a sworn statement regarding the status of their claim and, to the extent the plaintiff had not already done so, an individual lawsuit. Around 1,000 B3 plaintiffs remained after the PTO 63 process was complete. (No. 10-md-2179, Rec. Doc. 24268). In 2018, the Court issued Pretrial Order No. 66, which required the B3 plaintiffs to complete and serve a particularized statement of claim. Pretrial Order No. 68, issued in October of 2019, required B3 plaintiffs and BP to produce certain documents to one another.

### E. BP Demands Indemnity From the Responders; Litigation Results

In March of 2017, BP tendered a BELO case, *Odom v. BP*, No. 16-15974, to O'Brien and demanded indemnification pursuant to the O'Brien Contract. This was the first time BP demanded indemnification from either of the Responders. Many more tenders would follow. Two years later, in March of 2019, BP tendered the first B3 cases to the Responders (i.e., claims by cleanup workers that opted out of the Medical Settlement). In total, BP has tendered approximately 2,225 cases to O'Brien (consisting of 1,800 BELO cases and 425 B3 cases) and approximately 225 cases to NRC (consisting of 200 BELO cases and 25 B3 cases). Also in 2019, BP claimed for the first time to be an additional insured on certain insurance policies maintained by O'Brien.

20-30364.6844

The Responders refused BP's tenders, and O'Brien's insurer, Navigators Insurance Company ("Navigators"), refused to cover BP as an additional insured. In February of 2019, the Responders filed this action praying for a declaratory judgment that they do not owe BP indemnity. (Rec. Doc. 48). BP counterclaimed against the Responders (Rec. Docs. 32) and filed a third party claim against Navigators (Rec. Doc. 32). Specifically, BP (1) brings a breach of contact claim against O'Brien for refusing to indemnify BP, (2) seeks a declaratory judgment that NRC must indemnify BP if a factfinder finds gross negligence or willful conduct by NRC, (3) brings a breach of contract claim against Navigators for failing to provide insurance coverage to BP, and, (4) if the Court finds that Navigators does not owe coverage to BP, a breach of contract claim against O'Brien failing to name BP as an additional insured.[3]

In accordance with the Court's case management order (Rec. Doc. 43), the Responders, BP, and Navigators each filed motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Rec. Docs. 58, 59, 60). The Court has considered these motions and the parties' responses (Rec. Doc. 61, 62, 63) on the briefs.

## II.   LEGAL STANDARD

A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). A court can take judicial notice of any fact that is "not subject to reasonable

---

[3] BP also asserted a claim for unjust enrichment against the Responders, which the Court dismissed on a Rule 12(b)(6) motion. (Rec. Doc. 57).

20-30364.6845

dispute" and is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting Fed. R. Evid. 201(b)). A court may also consider exhibits to the pleadings or matters incorporated by reference in the pleadings. *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 834 (E.D. Tex. 2014). Courts routinely resolve contractual disputes through cross-motions for judgment on the pleadings when the dispute can be resolved as a matter of law. *See, e.g., Regency Title Co., LLC v. Westchester Fire Ins. Co.*, 5 F. Supp. 3d 836 (E.D. Tex. 2013).

The parties agree that Texas law applies to the O'Brien Contract, the NRC Contract, and the insurance policies.

## III.   DISCUSSION

### A.   NRC Is Not Required to Indemnify BP Against Any Claims

As mentioned above (*supra* Part I(A)), the NRC Contract stated that NRC would not owe BP contractual indemnity if NRC was held to be have no liability under "Responder Immunity Law." In 2016, the Court determined that NRC had no liability under "Responder Immunity Law." (*See supra* Part I(D)). Accordingly, under no circumstances is BP entitled to indemnity from NRC.

### B.   O'Brien Is Not Required to Indemnify BP Against the BELO Cases

BP demanded that O'Brien indemnify it against approximately 1,800 BELO cases.

20-30364.6846

The O'Brien Contract made O'Brien's indemnification obligation subject to the express requirement that BP obtain O'Brien's written consent before it settled any claims. (O'Brien Contract §§ 11.02, 11.04). The Contract also required that BP "promptly" notify O'Brien in writing of any claim that BP believed was entitled to indemnification. (*Id.*). There is a strong argument that a violation of either of these requirements would void O'Brien's duty to indemnify, regardless of whether the violation caused prejudice to O'Brien. *See Gandy v. Burton*, No. H-12-1883, 2013 WL 2902786, at *3 (S.D. Tex. 2013) (prejudice need not be shown for a non-insurance indemnity contract when the indemnitee violated a condition precedent). In any case, the Court finds that BP's agreement to the Medical Settlement not only violated the consent-to-settle and prompt notice provisions, but also caused prejudice to O'Brien.

As mentioned above, the Medical Settlement paid certain claims that were diagnosed before April 16, 2012 pursuant to the SPC matrix. Class members who are diagnosed with an illness after April 16, 2012 are allowed to pursue that claim through the BELO process. (Medical Settlement § VIII). Under this process, the class member first must file a Notice of Intent to Sue ("NOIS") with the Claims Administrator within four years of the date of diagnosis. If the Claims Administrator approves the NOIS, BP is given 30 days to elect to mediate the claim. If BP declines, the class member then has 6 months to file a BELO lawsuit in this Court.

The BELO lawsuit itself is subject to a number of conditions. Relevant here are the following: BP cannot raise a defense based on untimeliness (such as statute of limitations, prescription, or laches), nor can it raise a defense based on splitting a

20-30364.6847

cause of action. The Court agrees with O'Brien that BP's unilateral waiver of these two defenses prejudiced O'Brien.[4]

BP argues that O'Brien could have, but did not, object to the Settlement when it was going through the approval process in 2012. However, the fact that O'Brien could have objected after an agreement was reached hardly satisfies the express contractual requirement that BP obtain O'Brien's consent before it agrees to a settlement. Furthermore, O'Brien persuasively argues that prior to 2017 there was nothing to indicate that BP would ever call upon it to indemnify BP for any claim—SPC or BELO—that was included in the Medical Settlement. After all, O'Brien is listed among the numerous "Released Parties" in the Settlement; BP did not seek indemnification from O'Brien prior to the Medical Settlement (nor has it ever sought indemnification for the SPC claims), even though O'Brien did seek and received indemnification from BP during that time; and the provision that purports to preserve BP's indemnification rights is generic.[5] Given this, it's no surprise that O'Brien did not object to the Settlement.

If prior to the confection of the Medical Settlement BP had alerted O'Brien to the fact that it would one day call upon O'Brien to indemnify BP against BELO claims, then O'Brien might very well have demanded a place at the negotiating table

---

[4] Although the Medical Settlement does impose a time limit on BELO cases, it is longer than what would apply under maritime law (3 years from discovery) or Louisiana law (1 year), as class members are given four years from the date of diagnosis to file the NOIS, plus another 6 months to file the actual BELO complaint once the Claims Administrator gives notice that BP did not elect to mediate. The Court notes that it has frequently been the case that BELO plaintiffs take nearly the full 4 years to file a NOIS and nearly the entire 6 months to file the BELO lawsuit.

[5] "Except as provided in Section XXIX.L, this RELEASE is not intended to prevent BP from exercising its rights of contribution, subrogation, or indemnity under any law." (*See* Medical Settlement § XVI.K).

or at least objected to the Settlement's terms during the approval process. But BP did not do this, hence its notice was not prompt and, moreover, a violation of the consent-to-settle provision. And the fact is the concessions BP made with respect to the BELO cases did cause prejudice to O'Brien.[6]

Accordingly, the Court finds that O'Brien is not required to indemnify BP against the BELO cases.

### C.   O'Brien Is Not Required to Indemnify BP Against the B3 Cases

BP demanded that O'Brien indemnify it against approximately 425 B3 cases.

BP admits that "it is not requesting that the Responders take responsibility for the defense of B3 . . . claims, and that BP believe its continued control of the defense of these claims is in all the parties' best interest." (BP Answer ¶ 160, Rec. Doc. 52). Regardless of BP's beliefs about O'Brien's best interests, its action violates the express requirement in the O'Brien Contract that O'Brien, as indemnitor, "shall retain control of the conduct of such defense, including, but not limited to, the selection and management of counsel." (O'Brien Contract § 11.04).

Additionally, BP did not tender the B3 claims until March of 2019. Since the beginning of this MDL (August of 2010), the parties have been aware, at least in a general sense, that cleanup workers claimed to have suffered injuries because of exposure to oil and/or dispersant. As mentioned, all cleanup workers were class

---

[6] But for the fact that the Court has already determined that NRC does not have to indemnify BP for any claims (*see supra* Part III(A)), the Court would find that BP's agreement to the Medical Settlement similarly prejudiced NRC, voiding NRC's duty to indemnify BP against the BELO claims. *See Hiern v. St. Paul-Mercury Indem. Co.*, 262 F.2d 526, 529 (5th Cir. 1959) (requiring that an indemnitee do nothing to prejudice the rights of the indemnitor, even if not expressly required by the contract).

20-30364.6849

members bound by the Medical Settlement unless they opted out. The opt out deadline was in November 2012. After that point, BP had a list of 1,638 valid opt outs. The list provides first and last names, addresses, date of birth, attorney if represented, and GCCF claimant number if available. (Rec. Doc. 7989-12). At this point, the only information BP needed to tender a claim to O'Brien is the worker's employer. Such information was almost certainly available to BP for all of these workers. The short form joinders that plaintiffs could file to join the B3 Master Complaint required the plaintiff to list employer information. The Court acknowledges, however, that there is no guarantee that all cleanup workers would have filed a short form joinder or filled out the employer information. BP also had several databases containing worker information from the response. (*See* Medical Settlement § XXI.B). The Court finds that waiting over six years after the opt out deadline to finally tender these claims to O'Brien violated the express provision that BP provide O'Brien with prompt notice. Furthermore, the Court finds that this delay amounts to prejudice as a matter of law, assuming prejudice must be shown.[7]

Accordingly, the Court finds that O'Brien is not required to indemnify BP against the B3 claims.

---

[7] But for the fact that the Court has already determined that NRC does not have to indemnify BP against any claims (*see supra* Part III(A)), the Court would also find that this delay also failed the requirement imposed by law that BP provide NRC with "reasonable" notice and caused prejudice to NRC. *See Gonzalez v. Denning*, 394 F.3d 388, 395 (5th Cir. 2004) ("Texas law implies a duty to perform a contract within a reasonable time.").

20-30364.6850

### D.    BP Is Not an Additional Insured on the Bumbershoot and First Excess Policies

Separate from requiring O'Brien to indemnify BP against certain claims,[8] the O'Brien Contract also required O'Brien to carry certain types of insurance. Furthermore, O'Brien had to name BP as an additional insured on at least some of its policies. Sections 12.01 and 12.02 of O'Brien Contract stated:

12.01   <u>Insurance</u>. Contractor [O'Brien] shall at all times during the term of this Contract maintain, at its sole cost, the following insurance coverage:

     12.01.01   Workers' Compensation Insurance which complies with all applicable laws wherever the Services are performed . . . and wherever Contractor's contracts of employment are entered into;

     12.01.02   Employer's Liability Insurance, or its equivalent, with limits of not less than US $1,000,000;

     12.01.03   Comprehensive General Liability Insurance, including contractual liability coverage, with minimum limits of US $2,000,000 per occurrence;

     12.01.04   Automobile Liability Insurance covering all vehicles used in the Services with a minimum combined single limit of not less than US $1,000,000 per occurrence for bodily injury and property damage.

12.02   ***Except for Workers' Compensation Insurance set forth in Section 12.01.01, all policies shall name the Company Group [BP] as additional insureds.*** In addition, all of the policies listed above, without exception, shall be endorsed to waive subrogation against the Company Group [BP] by use of the following language: "The insurers hereby waive their rights of

---

[8] The O'Brien Contract states, "[T]he indemnity obligations of [O'Brien] as set out in this Article 11 are independent of any insurance requirements as set out in Article 12, and such indemnity obligations shall not be limited by any insurance requirements and shall not be lessened or extinguished by reason of [O'Brien's] failure to obtain the required insurance coverage or by any defenses asserted by [O'Brien's] insurers." (O'Brien Contract § 11.07; *see also id.* §§ 11.02, 11.003 (stating that the duty to indemnify exists "irrespective of insurance coverages")).

20-30364.6851

subrogation against BP American Production Company ("Company") and the other entities and persons of the Company Group under that certain Contract No. BPO-04-01476 between Company and The O'Brien's Group, Inc. ("Contractor"), and against any individuals, firms, or corporations for whom or with whom Company may be acting." Additionally, if Contractor shall perform any Services hereunder on navigable waters then each of the policies listed in 12.01.02 and 12.01.03 above shall be endorsed to cover marine operations.

(Rec. Doc. 59-5 at 9) (emphasis added).

O'Brien maintained four insurance policies that are relevant here:

1. Marine General Liability Policy, with coverage limits of $1 million per occurrence and $2 million in aggregate ("MGL Policy," Rec. Doc. 49-3) [9]
2. Contractor's Operations and Professional Services Environmental Insurance Policy, with coverage limits of $1 million per claim and $2 million in aggregate ("COPS Policy," Rec. Doc. 49-4)
3. Primary Bumbershoot Liability Policy, with $10 million coverage limit ("Bumbershoot Policy," Rec. Doc. 49-1)[10]
4. First Excess Bumbershoot Liability Policy, with $90 million coverage limit ("First Excess Policy," Rec. Doc. 49-2)[11]

The parties appear to agree that BP is an additional insured on the MGL Policy and the COPS Policy.[12] At issue is whether BP is also an additional insured on the Bumbershoot Policy and the First Excess Policy. BP asserts that it is; Navigators claims it is not.

BP is not explicitly listed as an additional insured on the Bumbershoot or the

---

[9] BP and the Responders refer to the MGL Policy as the "Starr Policy."

[10] BP and the Responders refer to the Bumbershoot Policy as the "Navigators Policy."

[11] The Court understands that O'Brien also maintained Second and Third Excess Polices, which provided $250 million in combined coverage excess of the First Excess Policy. These polices have not been provided to the Court, and Navigators—the only insurer BP sued in its third party claim—is not the lead insurer on either. Accordingly, the Court does not consider the Second and Third Excess Policies here. Nevertheless, BP alleges that the First, Second, and Third Excess Policies are all follow-form policies that adopted the terms and conditions of the Bumbershoot Policy. If this is correct, then the Court's ruling on the Bumbershoot and First Excess Policies would likely apply to the Second and Third Excess Policies as well.

[12] The parties' briefing indicates that these two policies have been exhausted, however.

20-30364.6852

First Excess Policy. However, those policies state that "[t]he unqualified word 'Assured,' . . . includes not only the Named Assured [O'Brien] but also . . . any . . . organization . . . to whom the Named Assured is **_obligated_** by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only in respect of operations by or on behalf of the Named Assured." (Rec. Doc. 49-1 at 11) (emphasis added). Therefore, whether BP is an additional insured on these policies turns on what O'Brien was "obligated" to provide under the O'Brien Contract. *See Ironshore Ins. Co. v. Aspen Underwriting, Ltd.*, 788 F.3d 456 (5th Cir. 2015) (discussed below).

Section 12.01 of the O'Brien Contract (quoted above) required O'Brien to maintain four types insurance: workers compensation, comprehensive general liability ("CGL"), employer's liability, and automobile liability. The first sentence of Section 12.02 then states, "Except for Workers' Compensation Insurance set forth in Section 12.01.01, all policies shall name the Company Group [BP] as additional insureds." The parties debate whether "all policies" in this sentence refers to only the three types of insurance explicitly required in Section 12.01 or all policies that O'Brien carried, whether required by the O'Brien Contract or not. For essentially the reasons put forth by Navigators and O'Brien,[13] the Court concludes that, when properly considered in context and not in a vacuum, "all policies" refers to the three types of insurance (and the corresponding amounts of insurance coverage) explicitly listed in Section 12.01. *See also Musgrove v. Southland Corp.*, 898 F.2d 1041, 1043-

---

[13] *See* Responders' Mtn. at 21-25, Rec. Doc. 58-1; Responders' Opp'n at 18-23, Rec. Doc. 62; Navigators' Mtn. at 14-15, Rec. Doc. 60; Navigators' Opp'n at 11-17, Rec. Doc. 63.

20-30364.6853

44 (5th Cir. 1990) (holding that Citgo was not an additional insured on the Contractor's excess liability policy (which provided coverage excess of a $1 million CGL policy), because the excess policy only extended coverage to entities "to whom . . . the Named Insured is obligated by virtue of a written contract to provide insurance" and the underlying contract—despite requiring that "[a]ll insurance coverages carried by Contractor, ***whether or not required hereby***, . . . shall extend to and protect [Citgo]"—only "obligated" the Contractor to maintain a minimum of $1 million in CGL insurance).[14]

Of the three types of insurance listed in Section 12.01, the only type of insurance that could potentially cover the B3 and BELO claims is "[CGL] Insurance, including contractual liability coverage, with minimum limits of US $2,000,000 per occurrence." Navigators contends, and BP does not appear to dispute (*see* Rec. Doc. 61 at 17), that the MGL Policy and the COPS Policy each provided CGL insurance and, combined, provided limits of $2 million per occurrence. As mentioned above, there also appears to be no dispute that BP is an additional insured on these policies. Therefore, together the MGL Policy and COPS Policy satisfied O'Brien's obligation to make BP an additional insured on CGL insurance with minimum limits of $2 million per occurrence.

While the Bumbershoot and First Excess Policies may provide additional CGL coverage excess of the MGL and COPS Policies, the O'Brien Contract did not obligate O'Brien to maintain this additional coverage or provide it to BP. Under controlling

---

[14] Although *Musgrove* applied Louisiana law, the Fifth Circuit later cited it with approval in a decision applying Texas law. *See Forrest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1045 (5th Cir. 1991).

20-30364.6854

precedent, then, BP is not an additional insured on the Bumbershoot and First Excess Policies. In *Ironshore Specialty Insurance Co. v. Aspen Underwriting, Ltd.*, a master services agreement ("MSA") required the contractor, Basic, to indemnify the well owner, Endeavor, against claims by Basic's employees, regardless of fault. 788 F.3d 456, 457-58 (5th Cir. 2015). The MSA also required Basic "[t]o support the indemnification provision in this [MSA]" with $5 million in CGL insurance ($1 million in primary CGL plus $4 million in excess coverage). *Id.* Basic, however, purchased $51 million in CGL insurance ($1 million in primary CGL and $50 million in excess). *Id.* When Endeavor was later sued by the families of two Basic employees who were killed in a fire at Endeavor's well, a dispute arose over whether Endeavor was an additional insured with respect to the entire $51 million or only the $5 million required by the MSA. *Id.* at 458-59. Like the Bumbershoot and First Excess Policies here, Basic's excess insurance policies stated that coverage extended to "any person or entity to whom [Basic] is ***obliged*** by a written 'Insured Contract' . . . to provide insurance such as is afforded by this Policy . . ." *Id.* at 460 (emphasis added). Applying Texas law, the Fifth Circuit held that Endeavor was limited to $5 million in insurance, because that is the amount Basic was "obligated" to provide under the MSA. *Id.* at 463.

Just as Endeavor was an additional insured only with respect to the $5 million in CGL insurance that Basic was obligated to provide by the MSA, so is BP only an additional insured with respect to the $2 million in CGL insurance that O'Brien was obligated to provide by the O'Brien Contract. Thus, BP is not an additional insured

with respect to the Bumbershoot and First Excess Policies.

Navigators also argues that BP is not an additional insured on the Bumbershoot and First Excess Policies because of the so-called Drilling Rig exclusion.[15] Given the Court's conclusion above, it is not necessary to decide whether this exclusion applies.

### E.   O'Brien Did Not Breach Its Contractual Obligation to Make BP an Additional Insured; Alternatively, BP's Breach of Contract Claim Is Untimely

BP asserts that if the Court finds that it is not an additional insured, then O'Brien has breached its contractual obligation to acquire coverage for BP. As just discussed, however, the GML and COPS Policies satisfied O'Brien's obligation under the O'Brien Contact. Therefore, BP's breach of contract claim is without merit and can be dismissed.

Alternatively, even if the Court determined that O'Brien breached its obligation to provide BP with insurance, the Court would still dismiss BP's breach of contract claim because it is untimely. Texas has a four year statute of limitations on contract claims. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). If O'Brien breached its contract with BP, BP's claim would have accrued in 2010 at the latest. Therefore, BP needed to file suit by 2014, not 2019.

### IV.   CONCLUSION

For the reasons explained above, the Responders do not owe BP contractual

---

[15] "This insurance shall be free from liability or expense arising . . . from ownership, use or operation of drilling rigs, drilling barges, drilling tenders and platforms, but this exclusion shall not apply to craft serving the foregoing such as crew, supply, or utility boats, tenders or tugs." (Rec. Doc. 49-1 at 24).

20-30364.6856

indemnification against the BELO cases or the B3 cases. Furthermore, BP is not an additional insured on the Bumbershoot Policy or the First Excess Policy. Finally, BP's breach of contract claim against O'Brien regarding insurance must be dismissed because O'Brien satisfied its obligation to provide BP with certain insurance or, alternatively, BP's claim is untimely.

Accordingly,

IT IS ORDERED that the Responders' and Navigators Motions for Judgment on the Pleadings (Rec. Docs. 58, 60) are GRANTED.

IT FURTHER ORDERED that BP's Motion for Judgment on the Pleadings (Rec. Doc. 59) is DENIED.

IT IS FURTHER ORDERED that within seven days the Responders and Navigators shall jointly submit a proposed judgment in accordance with the Court's rulings.

New Orleans, Louisiana, this 4th day of May, 2020.
[Revised on May 7, 2020.]

_____
United States District Judge

20-30364.6857

# TAB 5

# Master Consulting  Services Contract

between

## BP America Production Company

and

## The O'Brien's Group, Inc.

**Emergency Preparedness and Response Management Project**

**Contract No. BPO-04-01476**

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\lllerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

20-30364.1788

EMERGENCY PREPAREDNESS AND RESPONSE MANAGEMENT SERVICES CONTRACT
between
BP AMERICA PRODUCTION COMPANY
and
THE O'BRIEN'S GROUP, INC.

Page No.

1.01   Site ................................................................................................................... 1

2.01   Description of Services to be Performed.................................................................. 1

3.01   Exhibits .............................................................................................................. 1

4.01   Compensation ..................................................................................................... 1

5.01   Term, Termination, and Guarantee Period ............................................................ 1

6.01   Payments ............................................................................................................ 1

7.01   Audit.................................................................................................................. 1

8.01   Taxes ................................................................................................................. 2

9.01   Independent Contractor Relationship .................................................................... 2

10.01  Confidentiality ................................................................................................... 2

11.01  Indemnity .......................................................................................................... 3

12.01  Insurance ........................................................................................................... 6

13.01  Third Party Beneficiaries ..................................................................................... 6

14.01  Resolution of Disputes ......................................................................................... 6

15.01  Assignments ....................................................................................................... 6

16.01  Successors and Assigns......................................................................................... 7

17.01  Compliance with Laws ......................................................................................... 7

18.01  Conflict of Interest .............................................................................................. 7

19.01  Survival.............................................................................................................. 7

20.01  Entirety .............................................................................................................. 7

Exhibit "A"   --   Description of Services
Exhibit "B"   --   Compensation
Exhibit "C"   --   Substance Abuse Policy
Exhibit "D"   --   Provisions Regarding Equal Employment Opportunity
Exhibit "E"   --   Minimum Health, Safety, and Environmental Requirements
Exhibit "F"   --   Non-Harassment Policy

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\llerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-43

20-30364.1789

<u>MASTER CONSULTING SERVICES CONTRACT</u>

BP AMERICA PRODUCTION COMPANY (hereinafter referred to as "Company") desires to have the Services described below performed at the Site specified below in accordance with the terms and conditions of this Contract. THE O'BRIEN'S GROUP, INC. (hereinafter referred to as "Contractor") agrees to perform the Services described below.

1.01   <u>Site.</u> Services will be performed at Work location(s) designated by Company, as otherwise required to perform the Services under this Contract.

2.01   <u>Description of Services to be Performed</u>.  Contractor shall provide training/exercises and occasional plan revision assistance, as more particularly described in Exhibit "A" hereof.

3.01   <u>Exhibits</u>.  Exhibits set forth below are attached hereto and made a part of this Contract.  Contractor shall comply with all provisions set forth in said Exhibits.

      Exhibit "A"  –  Description of Services
      Exhibit "B"  –  Compensation
      Exhibit "C"  –  Substance Abuse Policy
      Exhibit "D"  –  Provisions Regarding Equal Employment Opportunity
      Exhibit "E"  –  Minimum Health, Safety, and Environmental Requirements
      Exhibit "F"  –  Non-Harassment Policy

4.01   <u>Compensation</u>.  For full payment for the performance of all Services, Company shall pay Contractor in accordance with Exhibit "B" hereof.

5.01   <u>Term, Termination, and Guarantee Period</u>.  This Contract shall be effective as of May 01, 2004 and continue until all Services are completed as specified in Exhibit "A," provided, however, that Company may terminate this Contract at any time, with or without cause, and without any liability to Contractor except for payment of Services satisfactorily performed up until the date of cancellation by serving written notice thereof. Termination of this Contract will not relieve Contractor or Company of obligations incurred prior to termination.  Notwithstanding the above expiration date, the terms and conditions herein shall govern until any Services in progress are completed.

Contractor agrees to perform the Services diligently, and in a safe and competent manner, and to correct defective Services without charge, if request is made by Company before the end of one (1) year following completion of the Services.

6.01   <u>Payments</u>.  Contractor shall submit a documented and itemized invoice in triplicate each month to Company covering the total for reimbursable costs and other Services performed during the preceding month, as confirmed by Company's representative, all in accordance with Exhibit "B," Compensation hereof.  Contractor shall identify each invoice with the Contract Number (BPO-04-01476), the Paykey Number, and the Project Identification (Emergency Preparedness and Response Management Project).  Company will pay each undisputed invoice within thirty (30) days after receipt.  Contractor shall mail the invoice to the following address or to such other address as may be formally advised in writing to Contractor:

      BP America Production Company
      Attention:  Scanning Dept. S646
      P.O. Box 22024
      Tulsa, OK 74121-2024

7.01   <u>Audit</u>.  Contractor shall maintain complete records pertaining to the Services.  Company shall have the right to inspect and audit relevant records relating to the Services and payment within a period of two (2) years after the Completion of Services, provided that Contractor shall have the right to exclude any proprietary matters, trade secrets, formulas, or processes, profit, and composition of percentage overhead, fixed fees, or lump sums, from

– 1 –

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\lllernas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-44

20-30364.1790

such inspection and audit. If the results reveal overpayments or underpayments, appropriate adjustments will be made.

8.01   Taxes.  Contractor shall be responsible for, and shall hold Company harmless from the reporting, filing and payment of any taxes (wherever and whenever arising), duties, charges or fees (and any related fines, penalties, or interest) imposed (except as provided in Section 8.02 herein) directly or indirectly on Contractor or its subcontractors, shareholder(s), employees, agents or servants as a result of Contractor's performance under this Contract in all jurisdictions. Company may withhold from sums otherwise due Contractor under this Contract any taxes or amounts required by applicable law to be withheld and paid to the appropriate taxing authorities and, Company shall provide Contractor with all receipts evidencing the payment to such authorities of the taxes or amounts so withheld.

8.02   The payments provided for in Exhibit "B" are exclusive of any value added taxes or sales/service taxes which may be imposed on such payments by the taxing authorities having jurisdiction. Subject to Company's right to verify that such taxes apply to the payments made hereunder, and subject to Company's right to verify Contractor's payment of such taxes to the appropriate taxing authorities, Company shall pay Contractor the amount of such taxes upon receipt of invoice, including the amount of such taxes, which invoice is issued in compliance with the applicable tax laws. Contractor shall use its best efforts to avail itself of any and all exemptions from and/or reductions of such taxes.

9.01   Independent Contractor Relationship.  Contractor will be acting as an independent contractor in performing Services under this Contract, and not as an agent, servant, employee or representative of Company. Accordingly, Contractor and Contractor's employees, agents, representatives or subcontractors will have no right to any Company employee benefits.

10.01   Confidentiality.  During Contractor's performance of Services, it may be necessary for Company to provide information, data and know-how to Contractor, including reports, solutions and interpretations. As a result of Contractor's Services, Contractor may develop information, data and know-how, including reports, solutions and interpretations. The information, data and know-how developed by Contractor under this Contract are the sole property of Company and will be considered as work done for hire. All such information, data and know-how, whether provided to or developed by Contractor, will be kept confidential by Contractor, will not be disclosed by Contractor to any third party, and will be used by Contractor only in the performance of the Services. The requirement to maintain information, data, and know-how in confidence, however, shall not apply to such information, data, and know-how which Contractor can show either (i) is already known to Contractor other than as a result of Services performed hereunder and from some other source other than Company Group or Company's other contractors or (ii) is or becomes a part of the public domain, other than by Contractor's own action. Upon request at any time, Contractor will return to Company any such information, data and know-how, whether provided to or developed by Contractor, which is in written or other physical form.

Contractor acknowledges and agrees that Company, in its sole discretion, may deliver and/or store confidential information in digital form on the Internet, extranets, and/or through public networks and service providers. Such digital information will be stored on internal or external computers and accessed from public telecommunications networks, and will be accessible by a controlled group of persons (the "Controlled Group"). Contractor agrees that the delivery and storage of such confidential information in this manner must not be deemed as making the information generally available to the public, even if such confidential information is accessed by persons who are not within the Controlled Group.

No press release or other public announcement or public disclosure having or containing any reference, either directly or by implication, to this Contract or the transactions herein contemplated, or to Company or any other entities or persons of Company Group, shall be made or used by Contractor or on its behalf, unless the same first shall have been approved in writing by an authorized officer of Company. This prohibition specifically includes, but is not limited to, any public release (either through print or broadcast news media), articles prepared for internal or external publication, technical papers, and discussions with journalists.

– 2 –

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\lllerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-45

20-30364.1791

**11.01**   **Indemnity**.

When used in this Article or elsewhere in this Contract, the following terms shall have the following meanings:

**11.01.01**   "Affiliate" of a company means a person or entity directly or indirectly controlling, controlled by, or under common control with such company. "Control" for this purpose shall, in the case of a corporation with outstanding voting stock, require the direct or indirect ownership of or power to vote with respect to outstanding shares of a corporation's capital stock constituting 50% or more of the votes of any class of such corporation's outstanding voting stock;

**11.01.02**   "Company Group" means the following entities and persons individually and collectively: Company and its Affiliates, its co-venturers, co-lessees, co-working interest owners and their Affiliates, and the officers, directors, employees, agents, and representatives of all of those entities;

**11.01.03**   "Contractor Group" means the following entities and persons individually and collectively: Contractor and its Affiliates, its subcontractors and their Affiliates, and the officers, directors, employees, agents, and representatives of all of those entities;

**11.01.04**   "Third Parties" means all persons and entities which are not included in Company Group or Contractor Group.

**11.02**   Subject to the other provisions of this Article 11, Contractor shall defend, indemnify, release, and hold Company Group harmless from and against all claims, liabilities, damages, and expenses (including without limitation attorneys' fees and other costs of defense), irrespective of insurance coverages, for the following, when arising out of or incidental to this Contract:

**11.02.01**   (i)   all injuries to, deaths, or illnesses of persons in Contractor Group; and

(ii)   all damages to or losses of Contractor Group property;

whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of Company Group or any other entity or person or the unseaworthiness of any vessel or unairworthiness of any aircraft;

**11.02.02**   (i)   all injuries to, deaths, or illnesses of Third Parties; and

(ii)   all damages to or losses of Third Parties' property;

when caused by or resulting from the negligence or fault of Contractor Group, provided that, in the event of joint or concurrent negligence or fault of Contractor Group and Company Group, Contractor's indemnification obligation hereunder shall be limited to its allocable share of such joint or concurrent negligence or fault;

**11.02.03**   it being the parties' intention that the indemnities provided for in this Section 11.02 are to apply;

**11.02.03.1**   without regard to any conflicting rules of liability under any applicable law or regulation, and

**11.02.03.2**   without regard to any successful limitation or exoneration of liability proceeding filed by or on behalf of Contractor Group pursuant to the laws of any state or country or the provisions of any international convention, and

– 3 –

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\llerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-46

20-30364.1792

11.02.03.3    whether or not the claim, liability, damage, or expense in question is;

11.02.03.3.1    predicated on negligence, fault, strict liability, statutory duty, or contractual indemnity, or

11.02.03.3.2    sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against Company Group.

11.03    Subject to the other provisions of this Article 11, Company shall defend, indemnify, release, and hold Contractor Group harmless from and against all claims, liabilities, damages, and expenses (including without limitation attorneys' fees and other costs of defense), irrespective of insurance coverages, for the following, when arising out of or incidental to this Contract:

11.03.01    (i)   all injuries to, deaths, or illnesses of persons in Company Group;

(ii)  all damages to or losses of Company Group property;

whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of Contractor Group or any other entity or person or the unseaworthiness of any vessel or unairworthiness of any aircraft;

11.03.02    (i)   all injuries to, deaths, or illnesses of Third Parties; and

(ii)  all damages to or losses of Third Parties' property;

when caused by or resulting from the negligence or fault of Company Group, provided that, in the event of joint or concurrent negligence or fault of Company Group and Contractor Group, Company's indemnification obligation hereunder shall be limited to its allocable share of such joint or concurrent negligence or fault;

11.03.03    it being the parties' intention that the indemnities provided for in this Section 11.03 are to apply;

11.03.03.1    without regard to any conflicting rules of liability under any applicable law or regulation, and

11.03.03.2    without regard to any successful limitation or exoneration of liability proceeding filed by or on behalf of Company Group pursuant to the laws of any state or country or the provisions of any international convention, and

11.03.03.3    whether or not the claim, liability, damage, or expense in question is;

11.03.03.3.1    predicated on negligence, fault, strict liability, statutory duty, or contractual indemnity, or

11.03.03.3.2    sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against Contractor Group.

11.04    Contractor or Company as the case may be shall promptly give to the other party notice in writing of any claim made or proceedings commenced for which Contractor or Company claims to be entitled to indemnification under this Contract.  Such notice shall state with as much detail as is reasonably practicable the facts and circumstances giving rise to the claim and shall be given as soon as possible after the party seeking indemnity hereunder (referred to in this Section 11.04 as the "Indemnitee")

– 4 –

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\lllerena\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-47

20-30364.1793

becomes aware of such claim or proceeding.  The party against whom such indemnity is sought (referred to in this Section 11.04 as the "Indemnitor") shall confer with the Indemnitee concerning the defense of any such claim or proceedings but, subject to the remainder of this Section 11.04, the Indemnitor or its insurer shall retain control of the conduct of such defense, including but not limited to the selection and management of counsel.  Notwithstanding the foregoing, however, neither party shall effect settlement or compromise of any claim or proceeding without having obtained the prior written consent of the other party, which shall not be unreasonably withheld.  However, if the Indemnitor's insurer(s) has agreed to provide defense and indemnification of any such claim or proceeding, then underwriter(s) shall retain the sole right to effect settlement and compromise of any such claim or proceeding.  The Indemnitee may, upon written notice to the Indemnitor and at the Indemnitee's sole cost and expense, select its own counsel to participate in and be present for the defense of any such claim or proceeding, provided such counsel shall not take any action in the course of such claim or proceeding to prejudice the defense of such claim or proceeding.

11.05    **Cross Indemnity.**   Contractor agrees to defend, indemnify, release, and hold Company's other contractors harmless in accordance with the provisions of this Article 11 (to the extent such other contractors execute cross indemnification provisions substantially similar to those contained in this Section 11.05) from and against all claims, liabilities, damages, and expenses (including without limitation attorneys' fees and other costs of defense), irrespective of insurance coverages for the following:

11.05.01     (i)     all injuries to, deaths, or illnesses of persons in Contractor Group; and

(ii)     all damages to or losses of Contractor Group property;

whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of Company's other contractors or any other entity or person or the unseaworthiness of any vessel or unairworthiness of any aircraft;

11.05.02     (i)     all injuries to, deaths, or illnesses of Third Parties (excluding the indemnified party); and

(ii)     all damages to or losses of Third Parties' (excluding the indemnified party) property;

when caused by or resulting from the negligence or fault of Contractor Group, provided that, in the event of joint or concurrent negligence or fault of Contractor Group and Company's other contractors, Contractor's indemnification obligation hereunder shall be limited to its allocable share of such joint or concurrent negligence or fault.

It is the intent of the parties herein to create a third party beneficiary obligation in favor of Company's other contractors who have included reciprocal cross indemnity provisions in their respective contracts with Company.

11.06    Except as may be otherwise expressly provided in this Contract, neither party shall be responsible or held liable to the other for indirect, special, incidental or consequential damages, loss of profits, loss of production, or loss of use except to the extent such indirect, special, incidental or consequential damages, loss of profits, loss of production, or loss of use are part of a Third Party claim for which a party is seeking contribution or indemnification pursuant to this Contract. Each party shall be granted an extension of time for performance of its obligations under this Contract if its performance is delayed due to causes beyond its reasonable control.

11.07    Contractor and Company agree to support their mutual indemnity obligations in this Article 11 with blanket contractual liability insurance or qualified self-insurance with minimum limits not less than Five Million U.S. Dollars (US$5,000,000.00).  Except as otherwise mandated by applicable law, the indemnity obligations of Contractor and Company as set out above shall be without monetary limit.

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\llerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-48

20-30364.1794

**Moreover, the indemnity obligations of Contractor as set out in this Article 11 are independent of any insurance requirements as set out in Article 12 below, and such indemnity obligations shall not be limited by any insurance requirements and shall not be lessened or extinguished by reason of Contractor's failure to obtain the required insurance coverage or by any defenses asserted by Contractor's insurers.**

12.01   <u>Insurance</u>.   Contractor shall at all times during the term of this Contract maintain, at its sole cost, the following insurance coverage:

    12.01.01   Workers' Compensation Insurance which complies with all applicable laws wherever the Services are performed (including Longshoremen's and Harbor Workers' Compensation act coverage if applicable) and wherever Contractor's contracts of employment are entered into;

    12.01.02   Employer's Liability Insurance, or its equivalent, with limits of not less than US$1,000,000;

    12.01.03   Comprehensive General Liability Insurance, including contractual liability coverage, with minimum limits of US$2,000,000 per occurrence;

    12.01.04   Automobile Liability Insurance covering all vehicles used in the Services with a minimum combined single limit of not less than US$1,000,000 per occurrence for bodily injury and property damage.

12.02   Except for Workers' Compensation Insurance set forth in Section 12.01.01, all policies shall name the Company Group as additional insureds. In addition, all of the policies listed above, without exception, shall be endorsed to waive subrogation against the Company Group by use of the following language: "The insurers hereby waive their rights of subrogation against BP America Production Company ("Company") and the other entities and persons of the Company Group under that certain Contract No. BPO-04-01476 between Company and The O'Brien's Group Inc. ("Contractor"), and against any individuals, firms, or corporations for whom or with whom Company may be acting." Additionally, if Contractor shall perform any Services hereunder on navigable waters then each of the policies listed in 12.01.02 and 12.01.03 above shall be endorsed to cover marine operations.

13.01   <u>Third Party Beneficiaries</u>.   Except as otherwise set forth in Article 11 hereof, nothing under this Contract shall be construed to give any rights or benefits in the Contract to anyone other than Company and Contractor, and all duties and responsibilities undertaken pursuant to this Contract will be for the sole and exclusive benefit of Company and Contractor and not for the benefit of any other party.

**14.01   <u>RESOLUTION OF DISPUTES</u>.   THE LAWS OF OKLAHOMA, U.S.A., SHALL GOVERN THE VALIDITY, CONSTRUCTION, INTERPRETATION, AND EFFECT OF THIS CONTRACT, EXCLUDING ANY CHOICE OF THE LAW RULES WHICH WOULD OTHERWISE REQUIRE THE APPLICATION OF LAWS OF ANY OTHER JURISDICTION.   ANY DISPUTE ARISING IN CONNECTION WITH THIS CONTRACT SHALL BE FINALLY SETTLED BY ARBITRATION. THE RULES OF ARBITRATION TO BE EMPLOYED AND THE PLACE OF ARBITRATION ARE, RESPECTIVELY, AMERICAN ARBITRATION ASSOCIATION, TULSA, OKLAHOMA, U.S.A.**

15.01   <u>Assignments</u>.   Contractor may not assign, transfer, or subcontract any part of this Contract to a third party without the prior written approval of Company. If Contractor shall cause any part of the Services hereunder to be performed by a subcontractor, Contractor shall remain liable for all of its obligations hereunder, and in addition shall require in its subcontracts that, with respect to the Services to be performed, the subcontractor agrees to extend to Company all rights and privileges which are given by Contractor to Company in this Contract.

Company may assign this Contract to any of its Affiliates, co-lessees, or co-working interest owners without Contractor's consent.

---

Model Approved by FC, 9-4-01
File: C:\Documents And Settings\lllerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

20-30364.1795

16.01 <u>Successors and Assigns</u>. This Contract shall inure to the benefit of and be binding upon the successors and permitted assigns of the parties.

17.01 <u>Compliance with Laws</u>. Contractor shall conduct its operations in accordance with the relevant laws, regulations, decrees, and/or official government orders of the country having jurisdiction over the location where Work is performed, including without limitation, those pertaining to health, safety, and environmental protection, provided that nothing in this Contract is intended or should be construed to require Contractor to act or fail to act if such action or inaction would be inconsistent with or penalized by the laws and regulations of the United States of America.

Contractor shall not do business with any company or person knowing the results thereof might benefit an officer, director, employee, agent, or representative of Company or any of its Affiliates. Contractor shall not engage in any activities which might reasonably be considered to be contrary or detrimental to the interests of Company or any of its Affiliates.

Contractor shall not pay any fee, commission, rebate, or other value to or for the benefit of any official or functionary of the government having jurisdiction over the location where Work is performed if such payment would be inconsistent with or penalized by the laws and regulations of the United States.

For purposes hereof, Contractor shall include all entities and persons of the Contractor Group.

18.01 <u>Conflict of Interest</u>. Contractor warrants that neither it nor any other entity or person in the Contractor Group has given any commissions, payments, gifts of substantial value, kickbacks, lavish or extensive entertainment, or other things of value to any officer, director, employee, agent, or representative of Company, or any family member thereof, or received same from any vendor, supplier, or contractor in connection with this Contract, and acknowledges that the giving or receiving of any such payments, gifts, kickbacks, extensive entertainment, or other things of value is strictly in violation of Company's corporate policy and may result in the cancellation of this Contract and other contracts. Contractor shall notify Company's security department of any such solicitation by any of such parties of Company as aforesaid. Contractor's compliance with the provisions of this Section 18.01 is subject to audit by Company under the provisions of Section 7.01 hereof.

19.01 <u>Survival</u>. Termination of the Contract and/or completion of the Services or any parts thereof shall not release the parties from obligations which expressly or by their nature survive or extend beyond the Contract, termination thereof, or completion of the Services.

20.01 <u>Entirety</u>. This Contract together with the Exhibits attached hereto contains the entire agreement between the parties and supersedes any oral or written communications heretofore made between the parties relating to this Contract. In the event of a conflict between a provision contained in the body of this Contract, Articles 1 through 20, and any provision contained in the Exhibits attached hereto, the provision set out in the body hereof shall control.

Model Approved by FC, 9-4-01
File: C:\Documents And Settings\lllerenas\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-50

20-30364.1796

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the day and year first above written in Section 5.01.


BP AMERICA PRODUCTION COMPANY
*COMPANY*

By: _____

_____
*Printed Name*

Title: _____

| Approved by: | |
|---|---|
| Legal | |
| Supply Chain Management | |


THE O'BRIEN'S GROUP, INC.
*CONTRACTOR*

By: _____

_____
*Printed Name*

Title: _____

Model Approved by FC, 9-4-01
File:  C:\Documents And Settings\Illerena1\Local Settings\Temp\Services Contract Obrien Rev 1.Doc

Contract No.

RE-51

20-30364.1797

# TAB 6

**BRIDGE AGREEMENT**
**HOU-WL4-3066**

This Service Contract HOU-WL4-3066 ("Contract") by and between BP America Production Company and BP Exploration & Production Inc. (together referred to as "COMPANY") and O'BRIEN'S RESPONSE MANAGEMENT INC. ("CONTRACTOR") is entered into and made effective on June 1st, 2010 ("Effective Date"). COMPANY and CONTRACTOR may hereinafter be referred to collectively as "PARTIES" or individually as a "PARTY".

In consideration of the covenants and provisions hereinafter provided, the PARTIES agree as follows:

1. This CONTRACT, except as specifically otherwise provided herein, shall be governed in all respects, *mutatis mutandis,* by the terms and conditions of the Master Service Consulting Contract. BPM-04-01476, with the effective date of May 1, 2004 by and between BP America Production Company and The O'Brien's Group Inc. a copy of which is attached hereto as Attachment 1.

2. Article 1.0 of Exhibit "A" of BPM-04-01476 shall be modified to include the revised "Scope of Services" which is attached hereto as Attachment 2.

3. Exhibit "B" of BPM-04-01476 shall be modified to include the attached "Rates for Professional Services" as Attachment 3.

4. The CONTRACT has been activated specifically to govern Work related to the BP Deep Horizon MC 252 Spill Response and shall remain active while COMPANY requires CONTRACTOR'S services in connection with that project. Notwithstanding any termination date, the terms and conditions herein shall govern until any Work in progress is completed or otherwise terminated.

5. The following Clause 7.02 is added to the CONTRACT:

    7.02   Where CONTRACTOR retains the services of a subcontractor ("Subcontractor") in providing goods or performing services as provided in the Bridge Agreement HOU-WL4-3066, the following will apply with regard to COMPANY's audit rights under Clause 7.01 above:

    When agreed upon between the CONTRACTOR and the Subcontractor, the Subcontractor agreements shall contain audit provisions providing that the Subcontractor agrees that the COMPANY's rights to audit such Subcontractor shall pass through CONTRACTOR such that CONTRACTOR's audit rights are also granted to COMPANY, and all obligations of CONTRACTOR to COMPANY for such audits shall be contractually imposed upon Subcontractor.

    In that event, any audit or inspection of a Subcontractor's records required by COMPANY shall be conducted directly between COMPANY and the Subcontractor and any adjustment to Subcontractor's invoices shall be made directly between COMPANY and Subcontractor, notwithstanding any other provision herein, CONTRACTOR shall have no responsibility to COMPANY or Subcontractor for any such adjustment, except for a pro-rata adjustment in any administration fee due CONTRACTOR under the CONTRACT.

    In that event, and when CONTRACTOR reasonably demonstrates that it followed approved processes and procedures and acted with due diligence with respect to the

1 of 11

RE-52

20-30364.1809

invoicing and payment of the goods and services provided by Subcontractor(s), COMPANY agrees to go directly to the Contractor for recovery. Any audit or inspection of a Subcontractor's records required by COMPANY shall be conducted directly between COMPANY and the Subcontractor and any adjustment to Subcontractor's invoices shall be made directly between COMPANY and Subcontractor, provided, however, if errors were made as a direct result of CONTRACTOR'S handling, errors were made, such as; double invoicing or keying entry errors, CONTRACTOR will be required to provide recovery of funds as appropriate including a pro-rata adjustment in any administration fee due CONTRACTOR under the CONTRACT.

6.   Clause 10.01 shall be amended as provided for below:

Confidentiality.  During CONTRACTOR's performance of Services, it may be necessary for COMPANY to provide information and data to CONTRACTOR, including reports, solutions and interpretations.  As a result of CONTRACTOR's Services, CONTRACTOR may develop information and data including reports, solutions and interpretations.  The information and data developed by CONTRACTOR under this CONTRACT are the sole property of COMPANY and will be considered as work done for hire.  All such information and data whether provided to or developed by CONTRACTOR, will be kept confidential by CONTRACTOR, will not be disclosed by CONTRACTOR to any third party, and will be used by CONTRACTOR only in the performance of the Services.  The requirement to maintain information and data in confidence, however, shall not apply to such information and data which CONTRACTOR can show either (i) is already known to CONTRACTOR other than as a result of Services performed hereunder and from some other source other than COMPANY GROUP or COMPANY'S other contractors  (ii) is or becomes a part of the public domain, other than by CONTRACTOR's own action or (iii) as may be required by subpoena or otherwise by law.   Upon request at any time, CONTRACTOR will return to Company any such information and data, whether provided to or developed by CONTRACTOR, which is in written or other physical form.

7.   The following Clause 10.02 is added to the CONTRACT:

The CONTRACTOR retains all rights, title, and interest in and to, any and all technology, software systems, computer programs, templates, formats, trademarks, trade secrets, copyrights, patents, and any other documents, records, and materials, whether written, audio, or video ("Intellectual Property") developed by CONTRACTOR.  COMPANY agrees to keep and maintain the strict confidentiality of all Intellectual Property, and all business information and affairs of CONTRACTOR which may be revealed to COMPANY as a result of the performance of this CONTRACT.  COMPANY agrees that it will not any time disclose to anyone outside of COMPANY GROUP any of CONTRACTOR's Intellectual Property (whether in written form or stored on magnetic, optical or other mass storage media), or use such Intellectual Property for its own benefit beyond the scope of this CONTRACT, or for the benefit of third parties, except pursuant to a lawful order of a court of competent jurisdiction.

20-30364.1810

8. Clauses 11.01 through 11.07 of the CONTRACT shall be removed in their entirety, and replaced with the following:

**11.01   INDEMNITY.**

WHEN USED IN THIS ARTICLE OR ELSEWHERE IN THIS CONTRACT, THE FOLLOWING TERMS SHALL HAVE THE FOLLOWING MEANINGS:

11.01.01   "AFFILIATE" OF A COMPANY MEANS A PERSON OR ENTITY DIRECTLY OR INDIRECTLY CONTROLLING, CONTROLLED BY, OR UNDER COMMON CONTROL WITH SUCH COMPANY. "CONTROL" FOR THIS PURPOSE SHALL, IN THE CASE OF A CORPORATION WITH OUTSTANDING VOTING STOCK, REQUIRE THE DIRECT OR INDIRECT OWNERSHIP OF OR POWER TO VOTE WITH RESPECT TO OUTSTANDING SHARES OF A CORPORATION'S CAPITAL STOCK CONSTITUTING 50% OR MORE OF THE VOTES OF ANY CLASS OF SUCH CORPORATION'S OUTSTANDING VOTING STOCK;

11.01.02   "COMPANY GROUP" MEANS THE FOLLOWING ENTITIES AND PERSONS INDIVIDUALLY AND COLLECTIVELY: COMPANY AND ITS AFFILIATES, ITS CO-VENTURERS, CO-LESSEES, CO-WORKING INTEREST OWNERS AND THEIR AFFILIATES, AND THE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, AND REPRESENTATIVES OF ALL OF THOSE ENTITIES;

11.01.03   "CONTRACTOR GROUP" MEANS THE FOLLOWING ENTITIES AND PERSONS INDIVIDUALLY AND COLLECTIVELY: CONTRACTOR AND ITS AFFILIATES, ITS SUBCONTRACTORS AND THEIR AFFILIATES, AND THE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, AND REPRESENTATIVES OF ALL OF THOSE ENTITIES.

11.01.04   "THIRD PARTIES" MEANS ALL PERSONS AND ENTITIES WHICH ARE NOT INCLUDED IN COMPANY GROUP OR CONTRACTOR GROUP.

11.02   SUBJECT TO THE OTHER PROVISIONS OF THIS ARTICLE 11, CONTRACTOR SHALL DEFEND, INDEMNIFY, RELEASE, AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING WITHOUT LIMITATION ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE), IRRESPECTIVE OF INSURANCE COVERAGES, FOR THE FOLLOWING, WHEN ARISING OUT OF OR INCIDENTAL TO THIS CONTRACT:

11.02.01   (i)   ALL INJURIES TO, DEATHS, OR ILLNESSES OF PERSONS IN CONTRACTOR GROUP; AND

(ii)   ALL DAMAGES TO OR LOSSES OF CONTRACTOR GROUP PROPERTY;

WHETHER OR NOT OCCASIONED BY OR THE RESULT IN WHOLE OR IN PART OF THE NEGLIGENCE OR FAULT, WHETHER SOLE, CONCURRENT, JOINT, ACTIVE, OR PASSIVE, OF COMPANY GROUP OR ANY OTHER ENTITY OR PERSON OR THE

RE-54

20-30364.1811

UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT;

11.02.02     (i)    ALL INJURIES TO, DEATHS, OR ILLNESSES OF THIRD PARTIES; AND

(ii)    ALL DAMAGES TO OR LOSSES OF THIRD PARTIES' PROPERTY;

WHEN CAUSED BY OR RESULTING FROM THE NEGLIGENCE OR FAULT OF CONTRACTOR GROUP, PROVIDED THAT, IN THE EVENT OF JOINT OR CONCURRENT NEGLIGENCE OR FAULT OF CONTRACTOR GROUP AND COMPANY GROUP, CONTRACTOR'S INDEMNIFICATION OBLIGATION HEREUNDER SHALL BE LIMITED TO ITS ALLOCABLE SHARE OF SUCH JOINT OR CONCURRENT NEGLIGENCE OR FAULT;

11.02.03    IT BEING THE PARTIES' INTENTION THAT THE INDEMNITIES PROVIDED FOR IN THIS SECTION 11.02 ARE TO APPLY;

11.02.03.01    WITHOUT REGARD TO ANY CONFLICTING RULES OF LIABILITY UNDER ANY APPLICABLE LAW OR REGULATION, AND

11.02.03.02    WITHOUT REGARD TO ANY SUCCESSFUL LIMITATION OR EXONERATION OF LIABILITY PROCEEDING FILED BY OR ON BEHALF OF CONTRACTOR GROUP PURSUANT TO THE LAWS OF ANY STATE OR COUNTRY OR THE PROVISIONS OF ANY INTERNATIONAL CONVENTION, AND

11.02.03.03    WHETHER OR NOT THE CLAIM, LIABILITY, DAMAGE, OR EXPENSE IN QUESTION IS:

11.02.03.1    PREDICATED ON NEGLIGENCE, FAULT, STRICT LIABILITY, STATUTORY DUTY, OR CONTRACTUAL INDEMNITY, OR

11.02.03.2    SOUGHT DIRECTLY OR INDIRECTLY BY WAY OF RECOVERY, INDEMNIFICATION, OR CONTRIBUTION BY ANY PERSON OR ENTITY AGAINST COMPANY GROUP.

11.03    SUBJECT TO THE OTHER PROVISIONS OF THIS ARTICLE 11, COMPANY SHALL DEFEND, INDEMNIFY, RELEASE, AND HOLD CONTRACTOR GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING WITHOUT LIMITATION ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE), IRRESPECTIVE OF INSURANCE COVERAGES, FOR THE FOLLOWING, WHEN ARISING OUT OF OR INCIDENTAL TO THIS CONTRACT:

20-30364.1812

11.03.01    (i)    ALL INJURIES TO, DEATHS, OR ILLNESSES OF PERSONS IN COMPANY GROUP;

(ii)    ALL DAMAGES TO OR LOSSES OF COMPANY GROUP PROPERTY;

WHETHER OR NOT OCCASIONED BY OR THE RESULT IN WHOLE OR IN PART OF THE NEGLIGENCE OR FAULT, WHETHER SOLE, CONCURRENT, JOINT, ACTIVE, OR PASSIVE, OF CONTRACTOR GROUP OR ANY OTHER ENTITY OR PERSON OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT;

11.03.02    (i)    ALL INJURIES TO, DEATHS, OR ILLNESSES OF THIRD PARTIES; AND

(ii)    ALL DAMAGES TO OR LOSSES OF THIRD PARTIES' PROPERTY;

WHEN CAUSED BY OR RESULTING FROM THE NEGLIGENCE OR FAULT OF COMPANY GROUP, PROVIDED THAT, IN THE EVENT OF JOINT OR CONCURRENT NEGLIGENCE OR FAULT OF COMPANY GROUP AND CONTRACTOR GROUP, COMPANY'S INDEMNIFICATION OBLIGATION HEREUNDER SHALL BE LIMITED TO ITS ALLOCABLE SHARE OF SUCH JOINT OR CONCURRENT NEGLIGENCE OR FAULT;

11.03.03    IT BEING THE PARTIES' INTENTION THAT THE INDEMNITIES PROVIDED FOR IN THIS SECTION 11.03 ARE TO APPLY:

    11.03.03.1    WITHOUT REGARD TO ANY CONFLICTING RULES OF LIABILITY UNDER ANY APPLICABLE LAW OR REGULATION, AND

    11.03.03.2    WITHOUT REGARD TO ANY SUCCESSFUL LIMITATION OR EXONERATION OF LIABILITY PROCEEDING FILED BY OR ON BEHALF OF COMPANY GROUP PURSUANT TO THE LAWS OF ANY STATE OR COUNTRY OR THE PROVISIONS OF ANY INTERNATIONAL CONVENTION, AND

    11.03.03.3    WHETHER OR NOT THE CLAIM, LIABILITY, DAMAGE, OR EXPENSE IN QUESTION IS:

        11.03.03.3.1    PREDICATED ON NEGLIGENCE, FAULT, STRICT LIABILITY, STATUTORY DUTY, OR CONTRACTUAL INDEMNITY, OR

        11.03.03.3.2    SOUGHT DIRECTLY OR INDIRECTLY BY WAY OF RECOVERY, INDEMNIFICATION, OR CONTRIBUTION BY ANY PERSON OR ENTITY AGAINST CONTRACTOR GROUP.

20-30364.1813

11.04   CONTRACTOR OR COMPANY AS THE CASE MAY BE SHALL PROMPTLY GIVE TO THE OTHER PARTY NOTICE IN WRITING OF ANY CLAIM MADE OR PROCEEDINGS COMMENCED FOR WHICH CONTRACTOR OR COMPANY CLAIMS TO BE ENTITLED TO INDEMNIFICATION UNDER THIS CONTRACT. SUCH NOTICE SHALL STATE WITH AS MUCH DETAIL AS IS REASONABLY PRACTICABLE THE FACTS AND CIRCUMSTANCES GIVING RISE TO THE CLAIM AND SHALL BE GIVEN AS SOON AS POSSIBLE AFTER THE PARTY SEEKING INDEMNITY HEREUNDER (REFERRED TO IN THIS SECTION 11.04 AS THE "INDEMNITEE") BECOMES AWARE OF SUCH CLAIM OR PROCEEDING. THE PARTY AGAINST WHOM SUCH INDEMNITY IS SOUGHT (REFERRED TO IN THIS SECTION 11.04 AS THE "INDEMNITOR") SHALL CONFER WITH THE INDEMNITEE CONCERNING THE DEFENSE OF ANY SUCH CLAIM OR PROCEEDINGS BUT, SUBJECT TO THE REMAINDER OF THIS SECTION 11.04, THE INDEMNITOR OR ITS INSURER SHALL RETAIN CONTROL OF THE CONDUCT OF SUCH DEFENSE, INCLUDING, BUT NOT LIMITED TO, THE SELECTION AND MANAGEMENT OF COUNSEL. NOTWITHSTANDING THE FOREGOING, HOWEVER, NEITHER PARTY SHALL EFFECT SETTLEMENT OR COMPROMISE OF ANY CLAIM OR PROCEEDING WITHOUT HAVING OBTAINED THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY, WHICH SHALL NOT BE UNREASONABLY WITHHELD. HOWEVER, IF THE INDEMNITOR'S INSURER(S) HAS AGREED TO PROVIDE DEFENSE AND INDEMNIFICATION OF ANY SUCH CLAIM OR PROCEEDING, THEN UNDERWRITER(S) SHALL RETAIN THE SOLE RIGHT TO EFFECT SETTLEMENT AND COMPROMISE OF ANY SUCH CLAIM OR PROCEEDING. THE INDEMNITEE MAY, UPON WRITTEN NOTICE TO THE INDEMNITOR AND AT THE INDEMNITEE'S SOLE COST AND EXPENSE, SELECT ITS OWN COUNSEL TO PARTICIPATE IN AND BE PRESENT FOR THE DEFENSE OF ANY SUCH CLAIM OR PROCEEDING, PROVIDED SUCH COUNSEL SHALL NOT TAKE ANY ACTION IN THE COURSE OF SUCH CLAIM OR PROCEEDING TO PREJUDICE THE DEFENSE OF SUCH CLAIM OR PROCEEDING.

11.05.   CROSS INDEMNITY. CONTRACTOR AGREES TO DEFEND, INDEMNIFY, RELEASE, AND HOLD COMPANY'S OTHER CONTRACTORS HARMLESS IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE 11 (TO THE EXTENT SUCH OTHER CONTRACTORS EXECUTE CROSS INDEMNIFICATION PROVISIONS SUBSTANTIALLY SIMILAR TO THOSE CONTAINED IN THIS SECTION 11.05) FROM AND AGAINST ALL CLAIMS, LIABILITIES, DAMAGES, AND EXPENSES (INCLUDING WITHOUT LIMITATION ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE), IRRESPECTIVE OF INSURANCE COVERAGES FOR THE FOLLOWING:

11.05.01   (i) ALL INJURIES TO, DEATHS, OR ILLNESSES OF PERSONS IN CONTRACTOR GROUP; AND

(ii)   ALL DAMAGES TO OR LOSSES OF CONTRACTOR GROUP PROPERTY;

WHETHER OR NOT OCCASIONED BY OR THE RESULT IN WHOLE OR IN PART OF THE NEGLIGENCE OR FAULT, WHETHER SOLE, CONCURRENT, JOINT, ACTIVE, OR PASSIVE, OF COMPANY'S OTHER CONTRACTORS OR ANY OTHER ENTITY OR PERSON OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT;

20-30364.1814

11.05.02     (i)     ALL INJURIES TO, DEATHS, OR ILLNESSES OF THIRD PARTIES (EXCLUDING THE INDEMNIFIED PARTY); AND

           (ii)     ALL DAMAGES TO OR LOSSES OF THIRD PARTIES' (EXCLUDING THE INDEMNIFIED PARTY) PROPERTY;

           WHEN CAUSED BY OR RESULTING FROM THE NEGLIGENCE OR FAULT OF CONTRACTOR GROUP, PROVIDED THAT, IN THE EVENT OF JOINT OR CONCURRENT NEGLIGENCE OR FAULT OF CONTRACTOR GROUP AND COMPANY'S OTHER CONTRACTORS, CONTRACTOR'S INDEMNIFICATION OBLIGATION HEREUNDER SHALL BE LIMITED TO ITS ALLOCABLE SHARE OF SUCH JOINT OR CONCURRENT NEGLIGENCE OR FAULT.

IT IS THE INTENT OF THE PARTIES HEREIN TO CREATE A THIRD-PARTY BENEFICIARY OBLIGATION IN FAVOR OF COMPANY'S OTHER CONTRACTORS WHO HAVE INCLUDED RECIPROCAL CROSS INDEMNITY PROVISIONS IN THEIR RESPECTIVE CONTRACTS WITH COMPANY.

11.06   EXCEPT AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN THIS CONTRACT, NEITHER PARTY SHALL BE RESPONSIBLE OR HELD LIABLE TO THE OTHER FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS, LOSS OF PRODUCTION, OR LOSS OF USE EXCEPT TO THE EXTENT SUCH INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS, LOSS OF PRODUCTION, OR LOSS OF USE ARE PART OF A THIRD PARTY CLAIM FOR WHICH A PARTY IS SEEKING CONTRIBUTION OR INDEMNIFICATION PURSUANT TO THIS CONTRACT. EACH PARTY SHALL BE GRANTED AN EXTENSION OF TIME FOR PERFORMANCE OF ITS OBLIGATIONS UNDER THIS CONTRACT IF ITS PERFORMANCE IS DELAYED DUE TO CAUSES BEYOND ITS REASONABLE CONTROL.

11.07   CONTRACTOR AND COMPANY AGREE TO SUPPORT THEIR MUTUAL INDEMNITY OBLIGATIONS IN THIS ARTICLE 11 WITH BLANKET CONTRACTUAL LIABILITY INSURANCE OR QUALIFIED SELF-INSURANCE WITH MINIMUM LIMITS NOT LESS THAN FIVE MILLION U.S. DOLLARS (US$5,000,000.00). EXCEPT AS OTHERWISE MANDATED BY APPLICABLE LAW, THE INDEMNITY OBLIGATIONS OF CONTRACTOR AND COMPANY AS SET OUT ABOVE SHALL BE WITHOUT MONETARY LIMIT.

MOREOVER, THE INDEMNITY OBLIGATIONS OF CONTRACTOR AS SET OUT IN THIS ARTICLE 11 ARE INDEPENDENT OF ANY INSURANCE REQUIREMENTS AS SET OUT IN ARTICLE 12 BELOW, AND SUCH INDEMNITY OBLIGATIONS SHALL NOT BE LIMITED BY ANY INSURANCE REQUIREMENTS AND SHALL NOT BE LESSENED OR EXTINGUISHED BY REASON OF CONTRACTOR'S FAILURE TO OBTAIN THE REQUIRED INSURANCE COVERAGE OR BY ANY DEFENSES ASSERTED BY CONTRACTOR'S INSURERS.

20-30364.1815

9.   The following provision is added for this scope of work only.

**11.08 POLLUTION**

11.08.01      NOTWITHSTANDING THE PROVISIONS OF SECTION 11.03.02 AND EXCEPT AS PROVIDED BY SECTION 11.02.01(II), SECTION 11.02.01(I) AND SECTION 11.08.01(B), COMPANY SHALL SAVE, INDEMNIFY, RELEASE, DEFEND AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY CLAIM OF WHATSOEVER NATURE ARISING FROM POLLUTION AND/OR CONTAMINATION INCLUDING WITHOUT LIMITATION SUCH POLLUTION OR CONTAMINATION FROM THE RESERVOIR OR FROM THE PROPERTY OR EQUIPMENT OF COMPANY GROUP ARISING FROM OR RELATED TO THE PERFORMANCE OF THE CONTRACT,

WHETHER OR NOT OCCASSIONED BY OR THE RESULT IN WHOLE OR IN PART OF THE NEGLIGENCE OR FAULT, WHETHER SOLE, CONCURRENT, JOINT, ACTIVE, OR PASSIVE, OF CONTRACTOR GROUP OR ANY OTHER ENTITY OR PERSON OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT.

IT BEING THE PARTIES' INTENTION THAT THE INDEMNITIES PROVIDED FOR IN THIS SECTION 11.08.01 ARE TO APPLY:

11.08.01      WITHOUT REGARD TO ANY CONFLICTING RULES OF LIABILITY UNDER ANY APPLICABLE LAW OR REGULATION, AND

11.08.02      WITHOUT REGARD TO ANY SUCCESSFUL LIMITATION OR EXONERATION OF LIABILITY PROCEEDING FILED BY OR ON BEHALF OF COMPANY GROUP PURSUANT TO THE LAWS OF ANY STATE OR COUNTRY OR THE PROVISIONS OF ANY INTERNATIONAL CONVENTION, AND

11.08.03      WHETHER OR NOT THE CLAIM, LIABILITY, DAMAGE, OR EXPENSE IN QUESTION IS:

11.08.03.01      PREDICATED ON NEGLIGENCE, FAULT, STRICT LIABILITY, STATUTORY DUTY, OR CONTRACTUAL INDEMNITY, OR

11.08.03.02      SOUGHT DIRECTLY OR INDIRECTLY BY WAY OF RECOVERY, INDEMNIFICATION, OR CONTRIBUTION BY ANY PERSON OR ENTITY AGAINST CONTRACTOR GROUP.

RE-59

20-30364.1816

11.08.02    NOTWITHSTANDING THE PROVISIONS OF SECTION 11.02.02 AND EXCEPT AS PROVIDED BY SECTION 11.03.01(II) AND SECTION 11.03.01(I), CONTRACTOR SHALL SAVE, INDEMNIFY, RELEASE, DEFEND AND HOLD HARMLESS COMPANY GROUP FROM AND AGAINST ANY CLAIM OF WHATSOEVER NATURE ARISING FROM POLLUTION OCCURRING ON THE PREMISES OF CONTRACTOR GROUP OR ORIGINATING FROM THE PROPERTY OR EQUIPMENT OF CONTRACTOR GROUP LOCATED ABOVE THE SURFACE OF THE LAND OR WATER ARISING FROM OR RELATING TO THE PERFORMANCE OF THE CONTRACT,

WHETHER OR NOT OCCASSIONED BY OR THE RESULT IN WHOLE OR IN PART OF THE NEGLIGENCE OR FAULT, WHETHER SOLE, CONCURRENT, JOINT, ACTIVE, OR PASSIVE, OF COMPANY GROUP OR ANY OTHER ENTITY OR PERSON OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT.

IT BEING THE PARTIES' INTENTION THAT THE INDEMNITIES PROVIDED FOR IN THIS SECTION 11.08.02 ARE TO APPLY;

11.08.02.01    WITHOUT REGARD TO ANY CONFLICTING RULES OF LIABILITY UNDER ANY APPLICABLE LAW OR REGULATION, AND

11.08.02.02    WITHOUT REGARD TO ANY SUCCESSFUL LIMITATION OR EXONERATION OF LIABILITY PROCEEDING FILED BY OR ON BEHALF OF CONTRACTOR GROUP PURSUANT TO THE LAWS OF ANY STATE OR COUNTRY OR THE PROVISIONS OF ANY INTERNATIONAL CONVENTION, AND

11.08.02.03    WHETHER OR NOT THE CLAIM, LIABILITY, DAMAGE, OR EXPENSE IN QUESTION IS:

11.08.02.1    PREDICATED ON NEGLIGENCE, FAULT, STRICT LIABILITY, STATUTORY DUTY, OR CONTRACTUAL INDEMNITY, OR

11.08.02.2    SOUGHT DIRECTLY OR INDIRECTLY BY WAY OF RECOVERY, INDEMNIFICATION, OR CONTRIBUTION BY ANY PERSON OR ENTITY AGAINST COMPANY GROUP.

10.   The indemnities provided for in Sections 11.01 through 11.08, shall be effective as of the Effective Date of Service Contract (BPO-10-01655), which is April 20, 2010.

11.   Clause 14.01 of the CONTRACT is deleted in its entirety, and replaced with the following:

14.01   RESOLUTION OF DISPUTES. THE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE VALIDITY, CONSTRUCTION, INTERPRETATION AND EFFECT OF THIS AGREEMENT, EXCLUDING ANY CHOICE OF LAW RULES WHICH WOULD

RE-60    20-30364.1817

REQUIRE OTHERWISE. ANY ACTION OR PROCEEDING SEEKING TO ENFORCE ANY PROVISION OF, OR BASED ON ANY RIGHT ARISING OUT OF, THIS AGREEMENT SHALL BE BROUGHT AGAINST ANY OF THE PARTIES IN EITHER STATE COURT OF THE STATE OF TEXAS, COUNTY OF HARRIS, OR THE U.S. FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, AND EACH OF THE PARTIES CONSENTS TO JURISDICTION OF SUCH COURTS (AND OF THE APPROPRIATE APPELLATE COURTS) IN ANY SUCH ACTION OR PROCEEDING AND WAIVES ANY OBJECTION TO VENUE LAID THEREIN. THE PREVAILING PARTY IN ANY DISPUTE HEREUNDER IS ENTITLED TO RECOVER ITS REASONABLE COSTS, EXPENSES, ATTORNEY'S FEES, AND INTEREST.

12.   The following provision is added to the CONTRACT:

21.01   Force Majeure.   Except as otherwise provided herein, the CONTRACTOR shall not be required to comply with any request to provide, or continue with any previous deployment of, personnel, equipment, supplies, or materials, upon the occurrence of an event of Force Majeure, or where, in the good faith judgment of the CONTRACTOR, circumstances in which the Oil Spill Response activities are to be conducted present an unreasonable risk to life or property. "Force Majeure" means the prevention or delay of performance under this CONTRACT by a cause or causes beyond the reasonable control of either party and not contemplated as a possible circumstance in which Services hereunder are to be performed. Such causes shall include, but not be limited to, acts of God, acts of public enemies, war, rebellion, sabotage, riot, fire, explosion, accident, or flood, governmental laws, regulations, labor trouble, strike or lockout.   The COMPANY shall be responsible for all reasonable costs incurred by CONTRACTOR and its subcontractors as the result of the Force Majeure event.

13.   Clause 6.01 shall be revised as follows:

Contractor shall regularly submit documented and itemized invoice(s) in triplicate to Company covering the reimbursable costs and other Services performed during the time period covered by such invoice, as confirmed by Company's representative, all in accordance with "Attachment 3," Compensation hereof.   The Contractor may submit the invoice on a weekly basis, but no later than once a month.   Contractor shall identify each invoice with the Contract Number (BPO-04-01476), the Paykey Number, and the Project Identification (Emergency Preparedness and Response Management Project). Company will pay each undisputed invoice within ten (10) days after receipt and Contractor shall pay subcontractors within 5 days of receipt of payment from Company.

14.   Contractor shall provide a monthly performance report.   Included with said report shall be current and prior spend levels, Subcontractor structure, on-going delayering/subcontracting efforts and 30 day forecasting for the aforementioned areas.   Contractor shall as requested by Company incorporate additional reporting requirements into this monthly report.   Failure to provide report in timely fashion may result in Contract termination.

10 of 11

20-30364.1818

15.   The Parties agree that the chart referenced in Note 2 of Attachment 3 shall be removed in its entirety, and shall be replaced with the following:

May 29, 2010 through 12:00 A.M. on July 19, 2010

| Actual Cost Per Day | Manpower and Equipment |
|---|---|
| $0->$5 million | 5% |

12:01 A.M. on July 19, 2010 through Completion

| Actual Cost Per Day | Manpower and Equipment |
|---|---|
| 0->$5 million | 2% |

IN WITNESS WHEREOF, the PARTIES have caused this CONTRACT to be executed in two (2) originals by their duly authorized representatives shown below.

| BP EXPLORATION & PRODUCTION INC. COMPANY | O'BRIEN'S RESPONSE MANAGEMENT INC. |
|---|---|
| By: _____ | By: _____ |
| WILBERT LONG Jr. *Printed Name* | Eric G. Ponitto *Printed Name* |
| Title: CPO _____ | Title: President _____ |

20-30364.1819

# TAB 7

BP America Production Co.
Contract #BPM-03-00864

*Agreement for the Provision of*
*Response Resources*

*Between*

**National Response Corporation**

*And*

**BP America Production Company**

July 1, 2003

20-30364.1829

**NATIONAL RESPONSE CORPORATION**
**Contract For Provision Of Supplemental Services**
**To BP America Production Company**

Contract #BPM-03-00864

Summary of Agreement

| 1. Place<br>Houston, TX | 2. Date<br>August 16, 2002 |
|---|---|
| 3. Client/Place of Business<br>BP America Production Company<br>200 Westlake Park Blvd.<br>Houston, TX 77079<br>Tel: (281) 366-2000<br>Fax: (281) 366-5710 | 4. Provider/Place of Business<br>National Response Corporation<br>11200 Westheimer, Suite 850<br>Houston, Texas 77042<br>Tel: (713) 977-9951<br>Fax: (713) 977-3042 |
| 5. Existing Under Law Of: | 6. Client Contact Name<br>Cynthia DeWitt |
| 7. Client's Insurer (include address)<br><br><br>Tel:<br>Fax: | 8. Client Contact's Telephone<br>(281) 366-3711 |
| | 9. Client's Qualified Individual (QI)<br>Cynthia DeWitt |
| | 10. Qualified Individual's 24-Hour Telephone<br>Wk: (281) 366-3711<br>Hm: (281) 565-3921<br>Mobil (281) 731-7018 |

List of Client's Facilities Covered Under this Agreement is Described in Schedule 1, Attached.

| 11. Contract Period<br>1.5 Years | 12. Commencing<br>June 1, 2003 | 13. Days Notice for Termination (Cl.10.2)<br>90 Days |
|---|---|---|
| 14. Per Barrel Fee (PBF)<br>N/A | 15. Counted Barrels (Year One)<br>N/A | 16. Retainer Fee (Year One 7/1/03-6/30/04)<br>$200,000 |
| | 17. Billing Cycle (Monthly, Quarterly or Yearly)<br>Quarterly In Advance | For Annual Renewal Fee Calculation , See Schedule 3. |

| 18. Place of payment; also state beneficiary and bank account<br>National Response Corporation<br>Chase Manhattan Bank<br>4 New York Plaza<br>New York, NY 10004<br><br>ABA:          021 000 021<br>Bank Account: 817 002669 | 19. Currency and method of payment<br>United States Dollars (USD$)<br>Payable via Wire Transfer in Advance |
|---|---|
| Signature (Client)<br><br>*[signature]* | Signature (Provider)<br><br>*Stevin A. Candito*<br>*Arlen Tidemann* |
| Title (Client)<br>CONTRACT SPECIALIST | Title (Provider)<br>PRESIDENT |

1

RE-64

20-30364.1830

**NATIONAL RESPONSE CORPORATION**
**Contract For Provision Of Supplemental Services**
**To BP America Production Company**

Contract #BPM-03-00864

**Terms of Contract**

**WHEREAS;**

A) The Client is entering into this Agreement in the capacity described in the Summary of Agreement with respect to the facilities described in Schedule 1 which are engaged in exploration, drilling, production, storage, offshore pipeline transportation and handling of oils;

B) Pursuant to federal law of the United States and the laws of various states of the United States, the Client or the principals on whose behalf the Client is acting may be required to evidence preparedness to respond to discharges of oil from facilities in United States navigable waters, including precontracting to meet planning requirements;

C) The Provider has, or through a network of independent contractors has access to, resources to respond to discharges of oil from facilities as required under federal law in Section 4202 of the United States Oil Pollution Act of 1990 and under state laws and as denominated in facility response plans;

D) The Provider and Client understand that the requirements for mobilization of response resources set forth under federal law, state laws or in facility response plans are planning requirements and are not performance requirements;

E) The Client or the principals on whose behalf the Client is acting may name the Provider as its oil spill removal organization in the response plans for the facilities referred to herein;

F) The Client may appoint the Provider to act as an oil spill removal organization upon and subject to the terms and conditions of this Agreement; and

G) The Provider will accept such appointment and will agree to act as an oil spill removal organization upon and subject to the terms and conditions of this Agreement.

**BY WHICH IT IS AGREED AS FOLLOWS:**

**1.   INTERPRETATION**

1) In this Agreement (including Schedules):

"Area of Service" means, the geographical area described in Schedule 2;

"Best Endeavors" means, with respect to either party, the performance in good faith to the extent of its total capabilities;

"Classification" means classification or other governmental approval required or available under Federal Law and State Law for an Oil Spill Removal Organization to be designated as such in the Response Plan;

"Client" means BP America Production Company in its role as operator of the facilities listed in Schedule 1;

"Discharge" means any emission (other than natural seepage), including, but not limited to, spilling, leaking, pumping, pouring, emitting, emptying or dumping of Oil;

"Drills" means any drills, exercises, practices or other preparatory or simulated activities in connection with which the Client has requested the Provider to mobilize or deploy Response Resources or to provide other services;

"EPA" means the United States Environmental Protection Agency;

"EPA Rule" means the final rule on Oil Pollution Prevention; Non-Transportation-Related Onshore Facilities dated July 1, 1994 (40 CFR Parts 9 & 112), as amended;

"Facility" means the facility or facilities identified in Schedule 1;

"Federal Law" means the United States Oil Pollution Act (33 U.S.C. 2701, et seq.), as amended, ("OPA") and the Federal Water Pollution Control Act (33 U.S.C. 1321, et seq.) ("FWPCA") and any other federal laws regarding a Discharge and Response Activities and regulations promulgated pursuant thereto and the Response Plan NAVIC;

"Hazardous Substances" means substances defined as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601, et seq.), as amended;

"Local Contractors" means independent oil spill removal companies located in the various states with whom the Provider has contracted to maintain and provide Response Resources in fulfillment of the Provider's obligations hereunder;

"MMS" means the Department of the Interior, Minerals Management Service;

"Marine Oil Pollution Insurance" means terminal owners and operators insurance from the insurer named on the Summary of Agreement providing indemnity cover for U.S. oil pollution liabilities, including removal costs, or

such other form of insurance for oil pollution liabilities, including removal costs, as may be deemed necessary by the Client;

"National Contingency Plan" means the National Contingency Plan prepared and published under Section 311 (d) of the FWPCA;

"Oil" means oil of any kind or in any form, including any and all substances defined or identified as oil under OPA, but shall not include substances defined or identified as Hazardous Substances;

"Oil Spill Removal Organization" means an entity established in a given geographic area to provide the personnel, equipment, supplies and other capability necessary to conduct response activities;

"Qualified Individual" means an English-speaking shore-based representative of the Client located in the United States, available on a 24-hour basis, familiar with implementation of the Response Plan and trained in his or her responsibilities under the plan, with full written authority to implement Response Activities and to engage the Provider for services hereunder;

"Provider" means NATIONAL RESPONSE CORPORATION, a corporation incorporated and existing under the laws of Delaware and having its principal office at 446 Edwards Ave., Calverton, New York 11933.

"Removal Costs" means the charges of the Provider for deploying Response Resources to a Discharge or threatened Discharge, including the charges for mobilization and demobilization of personnel, equipment and supplies; amounts reasonably paid to compensate third parties for property damaged or destroyed at the express written instruction of the Client or Qualified Individual; and containment, removal and storage of discharged Oil;

"Responder Immunity Law" means Federal Law or State Law which provides immunity from liability to those who respond to Discharges for the purpose of attempting to contain and remove Oil from the water, beaches or shoreline;

"Response Activities" means the action to contain and remove Oil from water, beaches and shorelines, the storage and disposal of recovered Oil, and other actions, including mobilization and demobilization of personnel, equipment, supplies and other capability as necessary to minimize or mitigate damage to the environment;

"Response Plan" means any contingency plan or response plan regarding Discharges covering the Facility prepared by or on behalf of the Client pursuant to Federal Law or State Law;

"Response Plan NAVIC" means the United States Coast Guard Navigation and Vessel Inspection Circular No. 7-92 dated September 15, 1992 regarding Interim Guidelines for the Development and Review of Response Plans for Marine Transportation related Facilities including Deepwater Ports;

"Response Resources" means the trained personnel, equipment, supplies and other capability named in a Response Plan or mobilized to perform Response Activities pursuant to Federal Law and State Law, other than personnel, equipment, supplies and other capability required to be carried aboard the Vessel;

"State Law" means the laws and regulations, if any, of the various state and local governments of any relevant state of the United States within the Area of Service regarding Discharges into navigable waters and Response Activities;

"U.S. Waters" means the navigable waters of the United States, including the waters of the Exclusive Economic Zone and the territorial waters of the states of the United States, all within the Area of Service;

"Vessel(s)" means the vessels identified in Schedule 1.

2) Clause headings and the table of contents are inserted for convenience of reference only and shall be ignored in the interpretation of this Agreement.

3) Client shall mean the owner or operator of the Facility(ies). An owner's agents and authorized representatives shall have no rights or obligations under the Agreement.

4) In this Agreement, unless the context otherwise requires:

a) references to any law enactment, regulation, or NAVIC shall be deemed to include references to such law, enactment, regulation, or NAVIC as re-enacted, amended, extended, consolidated or replaced and any orders, decrees, proclamations, regulations, instruments or other subordinate legislation made thereunder;

b) words importing the plural shall include the singular and *vice versa*;

c) the word "including" shall be construed as being by way of illustration or emphasis only and shall not be construed as, nor shall it take effect as, limiting the generality of any foregoing words.

2

RE-65

20-30364.1831

**NATIONAL RESPONSE CORPORATION**
**Contract For Provision Of Supplemental Services**
**To BP America Production Company**

<div style="text-align:right">

**Contract #BPM-03-00864**

**Terms of Contract**

</div>

2. **PROVIDER'S OBLIGATIONS**

1) The Provider shall provide, or cause to be provided, the services set out below for the Client and the Facilities within the Area of Service in exchange for the Basic Compensation provided in Clause 4:

a) sufficient Response Resources to enable the Client to meet the requirements of Federal Law (including those requirements for maximum most probable and worst case discharges) and State Law for precontracting for availability of Response Resources, except as provided in 2.4;

b) the training of the Provider's and Local Contractors' response personnel, exclusive of Drills requested by the Client, in compliance with Federal Law and State Law requirements for Oil Spill Removal Organization Classification, and maintenance of records of such training;

c) compliance by the Provider and Local Contractors with all applicable Federal Occupational Safety and Health Administration (OSHA) standards and similar State Laws and standards; and

d) all information regarding the Provider's and the Local Contractors' Response Resources which must be included in the Response Plan(s) of the Facilities to be filed with the U.S. Coast Guard , U.S. Environmental Protection Agency, MMS or appropriate State authorities to obtain Classification.

e) lists of equipment deployed under the PREP guidelines to assist the Client in satisfying its obligations under Federal Law.

2) The Provider shall provide, or cause to be provided, the services set out below for the Client and the Facilities within the Area of Service, upon request from the Client in exchange for the Additional Compensation provided in Clause 4:

a) supply and deployment of Response Resources required by the Client to conduct Response Activities;

b) supervision and coordination of deployment and use of Response Resources in such manner as directed by the Client;

c) the training of personnel of the Client in Response Activities and maintenance of records of such training;

d) supply and deployment of Response Resources in connection with Drills and maintenance of records of such Drills;

e) records and documentation concerning Response Resources, Response Activities and Removal Costs to assist the Client in connection with legal proceedings or for such other purposes as required by the Client.

3) a) Provider shall maintain a Level "E" Oil Spill Removal Organization (OSRO) classification for Rivers/Canals, Inshore/Nearshore, and Offshore/Open Oceans, as classified by the US Coast Guard through out the term of this Agreement;

b) In the event Classification under State Law is not available, the Provider warrants that it shall have sufficient Response Resources to enable the Client to meet the mandated levels of response capacity under State Law.

4) The Provider's obligations hereunder exclude providing Response Resources in accordance with U.S. Coast Guard and U.S. Environmental Protection Agency planning standards for the average most probable discharge

5) The Provider shall (without prejudice to the generality of any of the obligations, duties, powers and discretion vested in the Provider under or pursuant to this Agreement) be entitled to:

a) employ such agents as it deems necessary or expedient;

b) employ or engage trained superintendents, surveyors, engineers, consultants and experts to supervise or advise in relation to the services provided hereunder; and

c) enter into subcontracts with related parties or independent contractors to perform any part of the services which Provider is obliged to perform under this Agreement.

The Provider shall be an independent contractor and not an agent of the Client except as provided in Clause 7.5, and has sole responsibility for control of the details of the services hereunder.  Client retains no direction or controls over Provider in the performance of the details, except that the Client shall be solely responsible for determination of when Response Activities by the Provider should be initiated, increased, decreased, or ceased.

6) Notwithstanding any provision of this Agreement to the contrary, the Provider may, in its discretion, cease to deploy Response Resources for Response Activities of the Client or to provide any other services provided hereunder, if the Client fails (i) to make or secure payment in accordance with, and within the time periods provided within this Agreement or (ii) to maintain adequate Marine Oil Pollution Insurance provided in Clause 3.  The continuation of deployment of Response Resources after time periods for payment have elapsed shall not be deemed a waiver of the Provider's rights under this Agreement.  If the Provider ceases to deploy Response Resources or provide other services, or if the Client instructs the Provider to cease deployment of Response Resources or provide other services, the Provider shall be entitled to enter into an agreement with any other party, including governmental authorities, to deploy Response Resources or provide other services in connection with the same Discharge.  If the Client instructs the Provider to cease deployment due to Federalizing of a spill or any other reason, the Client shall be responsible for the costs of reasonable and

necessary measures taken by the Provider to demobilize, but not for costs incurred for the account of governmental authorities who may then engage the Provider.

3. **CLIENT OBLIGATIONS**

1) The Client shall:

a) designate a Qualified Individual and provide the Provider with the name, address, twenty four (24) hours-a-day telephone number and telefacsimile number of the Qualified Individual, and shall amend or update this information as necessary;

b) deliver, or caused to be delivered, to the Provider a copy of each Response Plan, including applicable waivers, and such other information concerning the Facilities as the Provider may reasonably request;

c) pay, or provide security for payment of, services and Removal Costs of the Provider in accordance with Clause 4;

d) be responsible for deciding which Response Resources shall be requested from the Provider to conduct Response Activities;

e) be responsible for coordinating and directing overall Response Activities;

f) be responsible for disposal of all Oil and Hazardous Substances collected by the Provider;

g) maintain in force at all times Marine Oil Pollution Insurance and furnish, whenever requested by the Provider, confirmation of such insurance;

h) comply with the procedures set forth in Provider's Oil Spill Notification procedures;

i) obtain and provide Provider with the Client's Environmental Protection Agency identification number or other such authorization required by law for any Discharge or threatened Discharge classified as a Hazardous Substance, or similar designation, prior to the Provider providing services hereunder.

2) Notwithstanding Clause 3.1, the Client shall not be required to utilize the Provider to deploy Response Resources for Response Activities and may arrange for the supply and deployment of Response Resources for Response Activities in the Area of Service by any other person.

4. **COMPENSATION**

1) The Basic Compensation to be paid to the Provider in the form of annual retainer fee as set forth in Schedule 3.

2) The Additional Compensation to be paid to the Provider is as follows:

a) Response Resources Use charges:

The Client shall pay the Provider for Response Resources deployed by the Provider or Local Contractors in connection with Response Activities taken in accordance with the time and material rates set out in Schedule 4.

The Provider alone is responsible for all payments due to the Provider's subcontractors, including, without limitation, Local Contractors, for services rendered

b) Other charges:

i) The Client shall pay the Provider for other services requested by the Client in accordance with the time and materials rates specified in Schedule 4 or at such other rates as may be agreed at the time;

ii) The Client shall pay the Provider for all reasonable costs of collection, litigation or settlement incurred by the Provider in order to collect unpaid fees for invoices, pursuant to this Agreement, including reasonable attorneys' fees.

3) The fees and charges referred to in this Clause shall be established annually and provided to the Client.  The Provider's Basic Compensation shall remain fixed during each one year period of this contract.  The Provider's Additional Compensation shall remain fixed during each one year period of this contract subject to adjustments noted on Schedule 4.  The Client agrees to pay fees and charges in accordance with the fees and charges in effect at the time the services are rendered.

4) The method, terms and conditions of billing and payment are set forth in Schedules 3 and 4.

6) Nothing herein shall be read to oblige the Provider to continue to deploy Response Resources when it has not been paid or provided with acceptable security for services rendered or services to be rendered.

5. **RESPONSE PROCEDURE**

1) The Client may initiate a request for the deployment of Response Resources for Response Activities by a direct telephone call to the Provider at (516) 369-8644, and such telephone call shall be deemed a request for the deployment of Response Resources by the Client for purposes of this Agreement.

2) The person initiating Response Activities on behalf of the Client shall provide information to the Provider as indicated in the "Oil Spill Notification Procedures", which is provided to the Client as part of this Agreement and is incorporated as such.

This information shall include:

3

<div style="text-align:center">

RE-66

</div>

20-30364.1832

a) the name of the Client;
b) the caller's name and title;
c) the name of the Facility;
d) the location of the spill including geographic coordinates;
e) the nature and estimated quantity of the Oil discharged;
f) the approximate time of the incident;
g) the weather conditions on the scene and forecasted weather conditions, if known;
h) the condition of Facility;
i) the name of the Qualified Individual and Federal On-Scene Coordinator (OSC), if known;
j) the Response Resources required to be deployed at that time.

3) The Client shall be responsible to notify governmental authorities as required by Federal Law or State Law of the Discharge. The Provider, however, is not precluded from notifying governmental authorities if deemed appropriate.
4) Upon receipt of the request for the deployment of Response Resources from the Client, the Provider shall use Best Endeavors to deploy such Response Resources in accordance with response time requirements specified under Federal law and State Law. Upon the Provider's arrival at the scene of the Discharge, the Qualified Individual, or other authorized representative of the Client, shall give the Provider written authorization to proceed with deployment of Response Resources. The Provider thereafter shall continue to act in accordance with the instructions of the Qualified Individual, or other authorized representative of the Client, subject to the terms of this Agreement.
5) The Client shall give the Qualified Individual, or other authorized representative on scene, full authority to approve the daily worksheets submitted by the Provider.

## 6. LIMITATIONS ON PROVIDER'S OBLIGATIONS

In the event the Provider is requested to deploy Response Resources for Response Activities for more than one Discharge within the Area of Service, the Provider and Client shall make good faith efforts to agree on allocation of Response Resources between the spills. In the absence of such agreement, the Provider shall allocate its Response Resources as directed by the OSCs or other U.S. Government representatives for the concurrent spills. In the absence of such direction the Provider shall not be obligated to remove or divert Response Resources from Response Activities in connection with another spill initiated prior to the request for deployment of Response Resources by the Client if the Provider deems that such Response Resources are necessary for proper completion of the previously initiated Response Activities. The Provider shall give notice to the Client if it will be unable to respond due to deployment of Response Resources for a discharge by another client.

## 7. DISCLAIMERS AND LIABILITY

1) THERE ARE NO WARRANTIES, INCLUDING A WARRANTY OF WORKMANLIKE SERVICE, WHICH EXTEND BEYOND THOSE EXPRESSLY SPECIFIED IN THIS AGREEMENT.
2) The Client acknowledges that Response Resources deployed by the Provider under this Agreement will be deployed on an emergency basis and that the purpose of Response Activities for which such Response Resources will be deployed is to remove, to the maximum extent practicable, Oil from a Discharge. The Provider does not warrant, by the terms of this Agreement or by undertaking, that Response Activities conducted with Response Resources will render the scene of the Discharge, or areas affected by the Discharge, safe for any form of human activity, or in compliance with any Federal law or State Law.
3) In no event shall the Provider, its affiliates, agents or employees be liable for or obliged in any manner for consequential or special damages including, but not limited to, any loss of profits or loss of use.
4) The Provider, its affiliates, agents, directors, officers or employees  shall be entitled to the protection of Responder Immunity Law and nothing herein shall be construed to allow the Client to recover by way of contribution, indemnity or otherwise from the Provider, its affiliates, agents, directors, officers or employees  any amounts for which the Client is liable to or has paid to third parties and for which the Provider, its affiliates, agents, directors, officers or employees  would have no liability under the Responder Immunity Law applicable in the jurisdiction where the Discharge and/or Response Activities have occurred.  In no event shall the Provider, its affiliates, agents, directors, officers or employees  be liable for or obliged in any manner for damages suffered by the Client arising from services hereunder whether damages to third parties or the Client directly, unless the damages were directly caused by the gross negligence or willful misconduct of the Provider, its affiliates, agents, directors, officers, or employees.
5) At no time shall the Provider be considered to have title to, or otherwise own, any Oil in the Facility or being removed from the water, shoreline or

elsewhere, or to be in possession or control of any such Oil, except as the Client's agent.

## 8. INSURANCE

1) The Provider and its subcontractors shall, at their own cost and expense, procure and maintain in effect during the term of this Agreement the following insurances:

| Coverage | Limits |
|---|---|
| Worker's Compensation | Statutory |
| Comprehensive General Liability (Bodily Injury/Property Damage) | $10,000,000 |
| Employer's Liability | $10,000,000 |
| Automobile Liability | $10,000,000 |
| Marine Liability | $10,000,000 |
| Aircraft | $10,000,000 |

2) The Provider shall furnish the Client insurance certificates reflecting the Provider's compliance with Clause 8 of this Agreement
3) The Client shall be responsible for maintaining its own liability insurance.
4) The Provider shall, at the request of the Client, acquire additional insurance or increased coverage at the cost of the Client.

## 9. INDEMNIFICATION

1) The Provider agrees to release,indemnify, defend and hold harmless the Client from and against any and all costs, liabilities, claims, demands, contractual liabilities and causes of action which the Client may suffer, incur, or pay out to the extent caused by the gross negligence or willful misconduct of the Provider, its affiliates, officers, directors, employees or subcontractors except to the extent that such liabilities, claims, demands and causes of action occur as a result of the Client's failure to observe or comply with any applicable law, regulation or lawful authority, or its failure to observe or comply with and fulfill its obligations under this Agreement or as a result of the grossly negligent or willful misconduct of the Client, its employees or agents, or of third parties.

2) a) The Client shall release, indemnify, defend and hold harmless the Provider, its affiliates, directors, officers, employees, agents and subcontractors from and against any and all, costs, liabilities, claims, demands and causes of action to the extent caused by the Client's failure to observe or comply with any applicable law, regulation or lawful authority, or its failure to observe or comply with and fulfill its obligations under this Agreement or as a result of the gross negligence or willful misconduct of the Client except to the extent that such liabilities, claims, demands or causes of action occur as a result of the gross negligence or willful misconduct of the Provider, its affiliates, officers, directors, employees or subcontractors;

b) Notwithstanding Clause 9.2(a), the Client shall indemnify, defend and hold harmless the Provider, its affiliates, directors, officers, employees, agents and subcontractors from and against any and all costs, liabilities, claims demands and causes of action for Removal Costs and damages under OPA §1002 or corresponding State Law which result from actions taken or omitted to be taken in the course of rendering care, assistance or advice in connection with a Discharge or threatened Discharge from a Facility consistent with the National Contingency Plan or as otherwise directed by the Client, the U.S. Coast Guard the U.S. Environmental Protection Agency or other governmental authorities, which the Provider, its affiliates, directors, officers, employees, agents and subcontractors, individually or collectively, may suffer, incur, or pay out, except to the extent that:

i) the Provider, its affiliates, officers, directors, employees or subcontractors is entitled to immunity from liability under Responder Immunity Law;

ii) such liabilities, claims, demands and causes of action arise our of the gross negligence or willful misconduct of the Provider, its affiliates, officers, directors, employees or subcontractors;

iii) the Client would have been entitled to a complete defense to liability under Federal Law and any relevant State Law had such claim, demand or cause of action been made against the Client or the Facility directly.

iv) such payment or indemnification would result in a payment by the Client in excess of the amount to which the Client would have been entitled to limit its liability under Federal Law and any relevant State Law had such claim, demand or cause of action been made against the Client or the Facility directly.

4

RE-67

20-30364.1833

**NATIONAL RESPONSE CORPORATION**
**Contract For Provision Of Supplemental Services**
**To BP America Production Company**

Contract #BPM-03-00864

Terms of Contract

**10. EXCUSE OF PERFORMANCE**

1) The performance of this Agreement, except for the payment of money for services already rendered and such further services as are necessary for standby or to demobilize following suspension, may be suspended by either party in the event performance of this Agreement is prevented by a cause or causes beyond the reasonable control of either party and not contemplated as a circumstance in which services hereunder are to be performed.  Such causes shall include, but not be limited to, acts of God, acts of public enemies, war, rebellion, sabotage, riot, fire, explosion, unavoidable accident, or flood; Governmental laws, regulations, requirements, orders or actions; national defense requirements, injunctions or restraining orders, labor trouble, strike, lockout or injunction.  In such event, the parties agree to use their Best Endeavors to eliminate the above referenced causes (provided that neither party shall be required to settle a labor dispute against its own best judgment).

2) The party asserting a right to suspend performance under this Agreement must, within a reasonable time after it has knowledge of the effective cause, notify the other party in writing of the cause for suspension, the performance suspended, and the anticipated duration of suspension.  Upon receipt of such notice advising of a material or indefinite suspension of performance, if such suspension substantially impairs the value of this Agreement to it, either party may terminate this Agreement on the number of days written notice set forth in the Summary of Agreement, Box 13.

3) The party asserting a right to suspend performance hereunder shall advise the other party when the suspending event has ended, and when performance will be resumed.

4) The Provider shall not deploy Response Resources in connection with Response Activities where, in the good faith judgment of the Provider's supervisory personnel on the scene and with the agreement of the Federal On Scene Coordinator, circumstances in which the Response Activities are to be conducted present an unreasonable risk to the personal safety of any person or property.

**11. TERMINATION**

1) If the Provider is unable, for a period of more than forty-five (45) days, to obtain or maintain Classification as an Oil Spill Removal Organization when such Classification is available, or is rejected as an oil spill removal organization by the Minerals Management Service, this Agreement may be terminated upon notice from the Client.  In such event the Provider shall pay to the Client in a form of liquidated damages an amount equal to the prorated portion of the annual retainer fee.

2) This Agreement may be terminated by the Provider upon forty-eight (48) hours notice to the Client in the event of the following:

a) with respect to a Facility or Facilities, when the Client has failed to provide the Provider with proof of insurance;

b) with respect to a Facility or Facilities, when the Client has failed to obtain a Certificate of Financial Responsibility from the appropriate Federal or State authorities;

c) when the Client is not current with payment of any fees or charges under this Agreement.

3) In the event of termination, the Client shall compensate the Provider for all services performed prior to termination and for such post-termination efforts as are reasonably related to the services such as demobilization and storage and disposal of recovered Oil.

4) Should the Client default in the performance of its obligations under this Agreement, or cease doing business as a going concern, become insolvent, commit an act of bankruptcy, or become the subject of any proceeding under the Bankruptcy Act or other insolvency laws, or be seized or nationalized by a government or government instrumentality, then the Provider may, without notice and without relieving the Client of it's obligations hereunder, terminate this Agreement, declare the balance of fees and charges to be due and payable, and assert maritime or other liens against the Facility or Facilities, wherever it may be found.

**12. CONFIDENTIALITY**

1) The Provider and the Client (including both party's principals, employees, officers, directors, and agents) shall treat as confidential and proprietary and not disclose to others during or subsequent to the term of this Agreement, except as is necessary to perform this Agreement (and then only on a confidential basis satisfactory to both parties), any information whether verbal or written, or any description whatsoever (including any technical information, experience or data) regarding the terms of this Agreement or the Provider's Response Resources and Contractors without, in each instance, securing the prior written consent of the other party, except where Federal and/or State requirements mandate such disclosure of any Discharge or Response Activity, or when both parties agree that the other may disclose that the Client has

contracted with the Provider or such information is otherwise in the public domain.

2) In the event that either party shall be required by subpoena, court, or administrative order (hereinafter "The Order") to disclose any information related to this Agreement, that party shall give immediate written notice to the other party.  Upon receipt of same, the party whose information may be the subject of The Order expressly reserves the right to interpose all objections it may have to the disclosure of its information at such party's expense.  The foregoing shall survive the termination of expiration of this Agreement and shall continue until a specific written release is given by either party.

**13. NON-ASSIGNMENT**

Except to the extent of the Provider's right to subcontract for Response Resources and other services hereunder, this Agreement is personal to the parties, and neither rights nor obligations may be assigned by either party without the prior written consent of the other party.

**14. TERM**

This Agreement shall continue in full force and effect for the period of years as indicated on the Summary of Agreement and for successive periods of one year thereafter unless terminated by either party upon written notice to the other party thirty (30) days or more before the next renewal date.

**15. WAIVER**

Any waiver by either party of any provision or condition of this Agreement shall not be construed or deemed to be a waiver of any other provision or condition of this Agreement, nor a waiver of a subsequent breach of the same provision or condition, unless such waiver be expressed in writing and signed by the party to be bound.

**16. SEVERABILITY**

If any section, subsection, clause or sentence of this Agreement shall be deemed illegal, invalid or unenforceable under any applicable law actually applied by any court of competent jurisdiction, such illegality, invalidity or unenforceability shall not affect the legality, validity and enforceability of this Agreement or any other section, subsection, clause or sentence thereof. Where, however, the provisions of any applicable law may be waived, they are hereby waived by the parties to the full extent permitted by such law to the end that this Agreement shall be a valid and binding agreement enforceable in accordance with its terms.

**17. GOVERNING LAW AND JURISDICTION**

1) This Agreement shall be governed by and construed in all respects in accordance with the law of the State of Texas except to the extent that this Agreement entitles the Provider to the benefit of Responder Immunity Law applicable in the jurisdiction where the services are rendered in which case the Responder Immunity Law shall govern only the issue of the Provider's liability.

2) a) In relation to any dispute arising out of or in relation to this Agreement, each of the Provider and the Client hereby irrevocably and unconditionally submits itself to the jurisdiction of the Supreme Court of the State of Texas, Harris County, the United States District Court for the Southern District of Texas, and any other court of competent jurisdiction within the City of Houston.  Such courts within the City of New York shall have exclusive jurisdiction with relation to any dispute arising out of or in connection with this Agreement and for the benefit of the Client.

b) Each of the Provider and the Client hereby consents to service of process in any suit, action or other proceeding arising out of or in relation to this Agreement in such court within the City of Houston, and agrees that service by mail shall constitute valid service upon the Provider and/or Client.

c) Nothing in this Clause shall affect the right of the Provider to serve process in any manner permitted by law, or limit the right of the Provider to take proceedings with respect to this Agreement against the Client in any jurisdiction.  Nor shall the taking of any proceedings with respect to this Agreement in any jurisdiction preclude the Provider from taking proceedings with respect to this Agreement in any other jurisdiction, whether concurrently or not.

d) The Provider may claim execution of any judgment or order in any court of appropriate authority of any state or country where the Client has any assets.

**18. MISCELLANEOUS**

1) This Agreement and the Schedules to this Agreement represent the entire understanding and agreement between the Provider and the Client and

5

RE-68

20-30364.1834

**NATIONAL RESPONSE CORPORATION**
**Contract For Provision Of Supplemental Services**
**To BP America Production Company**

Contract #BPM-03-00864

**Terms of Contract**

superseded any and all prior agreements, whether written or oral, that may exist between the Provider and the Client regarding same. No agreements to modify this Agreement shall be effective unless set forth in writing and signed by representatives of each party authorized to amend this Agreement.

2) None of the provisions of this Agreement shall be deemed to constitute a partnership or joint venture between the parties for any purpose.

3) The Provider shall not be restricted (whether as Provider, agent, owner, operator, charterer or otherwise) from carrying on or being concerned or interested in any business or activity which is or may be similar to or competitive with the business or activities now or at any time hereafter carried on by the Client.

## 19. NOTICES

1) Unless otherwise expressly provided herein, all notices, requests, demands, consents or other communications to or upon the parties under or pursuant to this Agreement shall:

 a) be in English and in writing;

 b) be deemed to have been duly given or made if it is:

  i) delivered by hand by a third party at the address of the relevant party set out below (or at such other address as the relevant party may hereafter specify to the other party) on the day of delivery; or

  ii) sent by telex or facsimile to the telex number or facsimile number of the relevant party set out herein, or to such other number as either party may hereafter specify to the other party, when sent.

2) For the purpose of this Clause, all notices, requests, demands or other communications shall be given or made by being addressed to the Client Contact or Provider as specified in the Summary of Agreement, Boxes 3, 4 and 6.

## 20. WARRANTY OF AUTHORITY

The Client hereby warrants that it is the operator (as that term is used customarily in the oil and gas industry) of the Facilities listed on Schedule 1. The Client agrees to provide, if requested by the Provider, written confirmation of such operatorship.

## 21. CHANGE OF FACILITY(S)

1) The Client may delete a facility from Schedule 1 and coverage under this Agreement at any time prior to entry of such facility in U.S. Waters upon seventy-two (72) hours notice to the Provider. Such facility shall be deleted from coverage under the Agreement as of the time and date specified in the notice or if no time and date is specified, upon the end of the seventy--two (72) hours period, or entry into U.S. Waters, whichever occurs first.

2) The Client may add a facility to Schedule 1 upon five (5) business days notice coupled with proof of Marine Oil Pollution Insurance and such other information as specified on the Summary of Agreement and as set forth in Provider's Instructions to Clients.

3) In the event that the Client adds a facility to Schedule 1 during the term of this agreement, such facility(ies) will be included under the same terms and conditions as those facilities entered under this contract.

## 22. HAZARDOUS MATERIALS

In regards to coverage of onshore and offshore non-transportation related facilities engaged in the production, storage and handling of "oil(s)", during the term of this contract there exists a possibility that regulations may be published which require planning standards for hazardous materials. Provider's intentions are to furnish hazardous materials response capability, however, given the present lack of regulatory detail, hazardous materials response services are considered outside the scope of the contract.

6

20-30364.1835

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Record Excerpts was filed electronically on August 27, 2020, and will, therefore, be served electronically upon all counsel.

<div align="right">

s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.

</div>